

## In The
## Court of Appeals
## Sixth Appellate District of Texas at Texarkana

_____

No. 06-08-00100-CR

_____

EMMITT WAYNE UPTON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 6th Judicial District Court
Lamar County, Texas
Trial Court No. 22383

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

H.M., a child less than fourteen years of age,[1] maintains that when she was spending the night at the home of a school friend, Emmitt Wayne Upton (the boyfriend of the friend's mother, known by the complainant as "Waynie"), forced his hand into her underwear and inserted his finger into her vagina and, during the same incident, thrust his hand into her clothing onto her breast. As a result of this encounter and H.M.'s subsequent outcry, Upton was convicted by a Lamar County jury of aggravated sexual assault by inserting his finger or fingers into the female sexual organ of H.M., a child under fourteen years of age, and of indecency with a child by touching the breast of H.M. with his hand. The trial court assessed punishment at twenty years' imprisonment for each conviction, the sentences to be served concurrently. Upton has appealed, and in five points of error, complains that he received ineffective assistance of counsel and that the evidence is both legally and factually insufficient to sustain his convictions.

## I.     The Evidence Is Legally and Factually Sufficient

Taking his points out of order, we first examine Upton's third point of error, in which he complains that the evidence is insufficient for a jury to conclude he penetrated H.M.'s vagina. Mere contact with the vagina does not amount to penetration. *Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992). Penetration under the aggravated sexual assault statute should be defined by its ordinary usage and may mean "to enter into" or "to pass through." *Id.* (citing WEBSTER'S THIRD NEW

_____

[1]Eleven years old at the time of the incident giving rise to the charges and thirteen years old at the time of trial.

2

INTERNATIONAL DICTIONARY, p. 1670 (Merriam-Webster 1981)); *see Rodda v. State*, 926 S.W.2d 375, 378 (Tex. App.—Fort Worth 1996, pet. ref'd). The question presented to this Court is whether the evidence at trial was sufficient to show there was entry of his finger beyond mere contact with the vaginal lips.

In reviewing the legal sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000).

On the night in question, H.M. was spending the night at the apartment of a school friend, Janie.[2] According to Janie, Upton was the boyfriend of Janie's mother and considered by Janie in a stepfather role. H.M. testified she was told to sleep on the couch. H.M. changed into her pajama bottoms, but continued to wear her t-shirt and brassiere. Instead of going immediately to sleep, H.M. decided to watch a recorded movie. After she had watched for approximately half an hour, H.M. testified that Upton entered the room and sat down on the couch close to her; she scooted away from him on the couch because his close proximity made her uncomfortable. According to H.M., this did not deter Upton, who moved closer to her and "stuck his hands down my [H.M.'s] pants." H.M. testified on direct examination as follows:

---

[2]This is an alias.

Q.      [By Prosecutor]  Did his hand go underneath your underwear?

A.      [By H.M.]  Yes, ma'am.

Q.      Was it touching your skin?

A.      Yes, ma'am.

Q.      What did he do with his hand?

A.      Like jab it in.

. . . .

Q.      [By Prosecutor]  . . . . Tell us exactly where he put his hand.

A.      [By H.M.]  On my right part of my chest.

Q.      So on your right breast?

A.      Yes, ma'am.

Q.      Was that over your clothing or under your clothing?

A.      Under my clothing.

After H.M. loudly protested, Upton ceased his advances.  The following morning, H.M. testified that Upton drove her, Janie, and Janie's sister, Jennifer,[3] to school.  H.M. testified that she was the last of the girls to exit the van; just before she did, Upton warned her that she "better not tell anyone." That same day, H.M. approached her math teacher with a request that she be permitted to visit the

---

[3]Likewise an alias.

4

school counselor; she handed the counselor a note that she had been "messed with" by a man; she was examined by a sexual assault nurse examiner (SANE) that afternoon.

When the prosecutor questioned H.M. later in the direct examination about the abuse, there is some apparent contradiction regarding the issue of penetration of the vagina. H.M. testified as follows:

> Q. [By Prosecutor] You told us that when you were sitting on the couch and Waynie put his hand on you -- put his hands in your [pants], he jabbed it in.
>
> A. [By H.M.] Yes, ma'am.
>
> Q. What did he jab in?
>
> A. His finger.
>
> Q. What did he jab it into?
>
> A. My private part.
>
> Q. Okay. Was it just on the outside of your private part, or did his fingers go inside your private part?
>
> A. The outside.
>
> Q. Okay. And he jabbed his fingers where?
>
> A. In my private part.

Upton argues that the evidence is insufficient to support the jury's verdict because H.M. testified that the contact was only on the outside.

5

H.M.'s testimony gives rise to a number of different but equally plausible interpretations. The testimony could be interpreted, as Upton contends, as denying any penetration of the vagina. By her first mention of "jab it in," it is possible that H.M. could have been referring to jabbing the hand underneath H.M.'s underwear, rather than any form of penetration of her body. An alternative interpretation could be that H.M. was referring to different, distinct acts committed by Upton and failed to distinguish between the acts. Immediately after stating the fingers were on the outside, H.M. testified Upton jabbed his fingers "[i]n my private part." H.M.'s use of the word "in" suggests penetration.

The State argues that H.M. merely did not adequately understand the question. Rebecca Peavey, a forensic interviewer at the Children's Advocacy Center in Paris, testified that an eleven year old may have difficulty differentiating between penetration and nonpenetration. According to Peavey, "that question in and of itself, it's a little difficult. Because they, in their minds, inside really means inside, up inside. Not just breaking the plane, breaking the barrier." Peavey testified that H.M.'s complaint about being sore after the incident is consistent with penetration of her vagina.

In addition to H.M.'s testimony, the record contains some medical evidence supporting the jury's conclusion that penetration occurred. Payton McMonigle, a registered nurse and a SANE, conducted a physical examination of H.M.[4] During the examination, McMonigle noted no trauma to the labia majora, perineum, or anus. The hymen was intact and no trauma was noted. McMonigle

[4]The examination was conducted on February 9, 2007, and the assault occurred on or about February 7, 2007.

did, however, observe two abrasions on the vaginal wall. According to McMonigle, an abrasion is a "superficial damage to the skin generally not deeper than the epidermis. Usually, abrasions occur when exposed skin, that's not covered, comes into contact with a moving object or rough surface." When asked whether "there would have to be some kind of object that went up about a [sic] inch and a half or so in order to make that abrasion," McMonigle agreed.

Upton argues "the evidence, at most, showed only that Appellant touched the child complainant's vagina with his hand." We disagree. Viewed in a light most favorable to the prosecution, a rational juror could have concluded beyond a reasonable doubt that Upton penetrated H.M.'s vagina with his finger. The evidence satisfies the test of legal sufficiency.

In contrast to a legal sufficiency review, in a factual sufficiency review, we review all the evidence, but do so in a neutral light and determine whether the evidence supporting the verdict is so weak or is so outweighed by the great weight and preponderance of the evidence that the jury's verdict is clearly wrong or manifestly unjust. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008); *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); *Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006); *Watson v. State*, 204 S.W.3d 404, 414–15 (Tex. Crim. App. 2006); *Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996).

The record contains some evidence contradicting H.M.'s version of the events. Cassandra Lester, Janie's sister, testified that she (Cassandra) "always slept on the couch" and testified that she had slept on the couch with her boyfriend on the evening in question. Janie testified that H.M. slept

7

in the same room that she did.  Upton argues that the medical evidence is inconclusive and argues that the abrasions to which McMonigle made reference may have been caused by some "debris" in the vagina which McMonigle also noted.[5]  McMonigle testified the abrasions could be present even if there "was no actual contact with a finger or anything like that," and she testified she did not "know what would have caused them."

As noted above, in one instance, the child testified that Upton only touched her private parts on the outside.  While the medical evidence strongly suggests penetration, the medical evidence was not conclusive.  However, our role is not to substitute our judgment for the jury's.  "Although an appellate court reviewing factual sufficiency has the ability to second-guess the jury to a limited degree, the review should still be deferential, with a high level of skepticism about the jury's verdict required before a reversal can occur."  *Roberts*, 220 S.W.3d at 524.  While the evidence of penetration is not conclusive, we have not been able to reach the high level of skepticism necessary for the evidence to be factually insufficient.  Viewed in a neutral light, the evidence supporting the verdict is not so weak or so outweighed by the great weight and preponderance of the evidence that the jury's verdict is clearly wrong or manifestly unjust.  The evidence is factually sufficient to sustain a finding of guilt.

---

[5]McMonigle noted black debris (which she indicated may have been dried blood) on the vaginal wall and testified it was possible the debris caused the abrasions.

**II.    The Record Does Not Establish That Upton Received Ineffective Assistance of Counsel**

In his remaining points of error, Upton complains that he received ineffective assistance of counsel. Upton raises three complaints about the trial counsel's failure to raise objections at three critical points: (1) to the testimony the child was being truthful, (2) to the testimony that a child of eleven years old has a different perception of penetration than adults, and (3) to the testimony of Peavey as an outcry regarding the statements of the victim.

The standard of testing claims of ineffective assistance of counsel is set out in *Strickland v. Washington*, 466 U.S. 668 (1984), and adopted for Texas constitutional claims in *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). In order to prevail on this claim, the appellant must prove by a preponderance of the evidence (1) that his counsel's representation fell below an objective standard of reasonableness and (2) that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 689; *Rosales v. State*, 4 S.W.3d 228, 231 (Tex. Crim. App. 1999). To meet this burden, the appellant must prove that his attorney's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, had it not been for his attorney's deficiency, the result of the trial would have been different. *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Under this standard, a claimant must prove that counsel's representation so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland*, 466 U.S. at 686.

Our review of counsel's representation is highly deferential, and we indulge a strong presumption that counsel's conduct falls within a wide range of reasonable representation. *Id.* at 689; *Tong*, 25 S.W.3d at 712. This Court will not second-guess through hindsight the strategy of counsel at trial, nor will the fact that another attorney might have pursued a different course support a finding of ineffectiveness. *Blott v. State*, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979). That another attorney (including appellant's counsel on appeal) might have pursued a different course of action does not necessarily indicate that the appellant received ineffective assistance of counsel. *Harner v. State*, 997 S.W.2d 695, 704 (Tex. App.—Texarkana 1999, no pet.). Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

First, Upton complains that he received ineffective assistance of counsel because his trial counsel failed to object when one of the SANE nurses testified that the child was being truthful. Peavey testified as follows:

> Q. [By Prosecutor] Tell me about how [H.M.] -- how she reacted to your asking her to give that information?
>
> A. [By Peavey] She was very pleasant. She was attentive. She was a little nervous, but she did make eye contact and she was very cooperative.
>
> Q. Did that tell you anything?
>
> A. I felt like she was being honest with me at the time.

Both this Court and the Texas Court of Criminal Appeals have held "a direct opinion on the truthfulness of the child" is inadmissible evidence. *Yount v. State*, 872 S.W.2d 706, 708 (Tex. Crim. App. 1993); *Sessums v. State*, 129 S.W.3d 242, 247 (Tex. App.—Texarkana 2004, pet. ref'd). While an expert may testify to behaviors and traits that might be indicia of manipulation, a direct comment on a complainant's "truthfulness" is "absolutely inadmissible." *Sessums*, 129 S.W.3d at 247; *see Warren v. State*, 236 S.W.3d 844, 849 (Tex. App.—Texarkana 2007, no pet.) (testimony that self-mutilation conduct was consistent with the conduct of other children who had suffered molestation was admissible).

This case is distinguishable from our opinions in *Sessums v. State* and *Fuller v. State* in that the opinion concerning truthfulness was neither elicited by the State nor was extensively emphasized by the State. *See Sessums*, 129 S.W.3d at 248 (finding ineffective assistance of counsel); *Fuller v. State*, 224 S.W.3d 823, 836 (Tex. App.—Texarkana 2007, no pet.) (finding ineffective assistance of counsel). In both cases, the State elicited opinions concerning truthfulness from four expert witnesses. *Sessums*, 129 S.W.3d at 248; *Fuller*, 224 S.W.3d at 86. In *Sessums*, the State emphasized their opinions in its closing argument. *Sessums*, 129 S.W.3d at 248. The testimony in this case was spontaneous on the part of the witness and was not emphasized by the State. Trial counsel could have reasonably concluded an objection would have merely emphasized the testimony, stamping it more indelibly into the minds of the jurors than simply allowing it to glide past. Although Peavey's statement was inadmissible, and although trial counsel could have objected and possibly could have

11

obtained a favorable ruling to that effect, it would have been incumbent on counsel to proceed to request a special instruction for the jury to disregard and then to move for a mistrial in order to fully preserve the error. More likely, the objection would have done nothing more than highlight the unsolicited opinion to the jury. The trial counsel's performance was not patently deficient for failing to object.

The second issue is whether the attorney was ineffective for not objecting to the testimony of Peavey. Peavey testified that an eleven year old may have difficulty differentiating between penetration and nonpenetration. According to Peavey, "that question in and of itself, it's a little difficult. Because they, in their minds, inside really means inside, up inside. Not just breaking the plane, breaking the barrier." Upton argues that the testimony is bolstering and speculative. The State argues the testimony was not bolstering because the testimony reflects that Peavey was expressing an opinion that H.M.'s behavior was consistent with that commonly observed among children who were sexually abused.[6] Bolstering occurs when one party introduces evidence for the purpose of adding credence or weight to earlier unimpeached evidence offered by that same party. *Rousseau v. State*, 855 S.W.2d 666, 681 (Tex. Crim. App. 1993); *Mumphrey v. State*, 155 S.W.3d 651, 656 (Tex. App.—Texarkana 2005, pet. ref'd). Speculative testimony is also prohibited under

_____

[6]Although not mentioned by the State, the experience level of this witness would have qualified her as an expert in the field, rendering her qualified to provide opinion testimony. *See* TEX. R. EVID. 704.

12

the Texas Rules of Evidence. *See* TEX. R. EVID. 602, 611. Whether the testimony is bolstering or speculative is within the zone of reasonable disagreement.

Where an appellate record is silent as to why trial counsel failed to take certain actions, the appellant has failed to rebut the presumption that trial counsel's decision was in some way reasonable, whether it is conceivable or not. *See Mata v. State*, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007). The conduct must be "so outrageous that no competent attorney would have engaged in it." *Fox v. State*, 175 S.W.3d 475, 485–86 (Tex. App.—Texarkana 2005, pet. ref'd); *see Thompson*, 9 S.W.3d 808. In this case, there is no record at any level to indicate why counsel chose to take or declined to take any of these actions. The ineffectiveness of counsel is a matter that must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Smith v. State*, 51 S.W.3d 806, 813 (Tex. App.—Texarkana 2001, no pet.). The record does not establish that trial counsel's performance was deficient for failing to object to the testimony that an eleven-year-old child may have difficulty differentiating between penetration and a lack of penetration.

Upton's remaining argument is that his trial counsel was ineffective for failing to object to the State calling Peavey as an outcry witness or permitting McMonigle to read the statement made to Peavey by H.M. Upton argues that the school counselor, Mrs. Robbins (and neither Peavey nor McMonigle), was the proper outcry witness; accordingly, trial counsel provided ineffective assistance in his failure to object to the hearsay statements of Peavey and McMonigle.

Article 38.072 of the Texas Code of Criminal Procedure provides an exception to the hearsay rule for testimony by "outcry witnesses" when specific requirements are met. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072 (Vernon 2005). An outcry witness is the first person, eighteen years of age or older, other than the defendant, to whom the child victim made a statement about the details of the offense. TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a)(2); *Brown v. State*, 189 S.W.3d 382, 385 (Tex. App.—Texarkana 2006, pet. ref'd).

The State argues that H.M. only wrote a note to Robbins, which merely alludes to the sexual abuse, a note which the State argues is insufficiently detailed to conclude that the school counselor should be the one outcry witness. We observe that a "statement about the offense" must describe the alleged offense in some discernible manner—more than a general allusion to sexual abuse. *Brown*, 189 S.W.3d at 385. The State's argument, though, is not supported by the record. H.M. testified that she wrote the note during math class, on her grade sheet. H.M. testified that her math teacher excused her from class to talk with Robbins. The note, in its entirety, states as follows: "Mom what happen [sic] is Connie Man Wanney messed with me. Can I just go home it fells [sic] like everyone know because they keep looking at me I'm sorry please don't yell." H.M. testified that she handed this note to the school counselor. The record, though, establishes the note was not the sole interaction between Robbins and H.M. On direct examination, H.M. testified that in addition to giving Robbins the note, H.M. told the counselor why she was there. On cross-examination, H.M. described the conversation as follows:

14

Q. [By Defense Counsel] How much information did you tell the counselor?

A. [By H.M.] Just about all of it.

Q. You told her all of it?

A. Yes, sir.

H.M. testified that she talked to Peavey and another nurse after talking to the school counselor. Robbins was not called as a witness.

The above testimony occurred prior to Peavey being called as an outcry witness; no request was made by trial counsel for an Article 38.072 hearing. The foundation for objection to the testimony of Peavey had been established. Further, the State requested McMonigle, the nurse who performed the physical examination of H.M., read the statement H.M. gave Peavey into the record. There were discrepancies between some of the details of the incident as initially related to Peavey by H.M. and the testimony by H.M. at trial; had Peavey not been permitted to testify, trial counsel would have been deprived of the basis to challenge the somewhat altered recount by H.M. Trial counsel may have held a belief that Robbins, who worked with children as a counselor on a day-to-day basis, might have been more damaging to the defense as a witness than either Peavey or McMonigle and that to insist on her position as the outcry witness would have been damaging to the case. While the testimony of trial counsel might have been elicited at a hearing on a motion for new trial or through some other means to determine trial counsel's thought process or trial strategy, the rationale for this decision remains undetermined. Other than this, although we find it difficult to

15

imagine that any conceivable strategy exists for trial counsel not to have objected to Peavey being called as an outcry witness or to McMonigle reading a part of H.M.'s statement as given to Peavey, it is not necessary for us to determine whether counsel's performance in failing to object was deficient.

However, even assuming arguendo that trial counsel's performance was deficient, the record does not establish there is a reasonable probability that, but for trial counsel's deficient performance, the result of the trial would have been different. Upton argues that the record establishes a reasonable probability of a different result. According to Upton, Peavey would have been ineligible to testify. Upton now argues that due to the inconsistencies between the child's testimony and the other witnesses, there would have been a different outcome had proper objections been made.

The statement H.M. provided to Peavey was not entirely consistent with H.M.'s trial testimony. For example, Peavey testified that H.M. claimed in her interview to having worn jeans or similar pants which Upton unzipped, whereas H.M. testified at trial that she was wearing pajama pants. This discrepancy and other inconsistent details were pointed out to the jury. Further, some of Peavey's testimony and the majority of McMonigle's testimony would have likely been admissible, even if trial counsel had sustained an objection to the hearsay statements of H.M.

In addition, there is nothing in the record which reveals that the testimony provided by Peavey and McMonigle as to the statements made to them by H.M. was less damaging than if the same testimony were provided by Robbins.

16

Overall, we are not convinced there is a reasonable probability of a different outcome if Upton's trial counsel had performed differently.

We overrule Upton's claim that he received ineffective assistance of counsel.

For the reasons stated, we affirm the judgment of the trial court.


Bailey C. Moseley
Justice

Date Submitted:    January 9, 2009
Date Decided:     January 22, 2009

Do Not Publish

17