Larry Don SESSUMS, Sr., Appellant,

v.

The STATE of Texas, Appellee.

No. 06–02–00149–CR.

Court of Appeals of Texas, Texarkana.

Submitted Feb. 4, 2004.

Decided Feb. 26, 2004.

Judy Hodgkiss, Moore Law Firm, LLP, James R. Rodgers, Paris, for appellant.

Michael Skotnik, Asst. Dist. Atty., Bonham, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

A jury convicted Larry Don Sessums, Sr., of one count of aggravated sexual assault of a child and one count of indecency with a child. The convictions originated from a single indictment containing multiple counts. The jury assessed punishment at forty years' imprisonment for aggravated sexual assault and twenty years' impris-onment for indecency with a child. In an unpublished opinion released June 20, 2003, we found there was no evidence to support the conviction for aggravated sexual assault and reversed and ordered an acquittal on that charge. Based on the fact the brief did not argue or discuss the conviction for indecency with a child, but referred only to the aggravated sexual assault, we concluded the brief presented nothing for our review on that conviction. *See* TEX.R.APP. P. 38.1(h) (requiring brief to contain clear and concise argument for contentions made, with appropriate citation to authority and record); *Ladd v. State*, 3 S.W.3d 547, 575 (Tex.Crim.App. 1999) (holding that requiring appellants to abide by briefing rules and make reasonable arguments does not offend due process).

The Texas Court of Criminal Appeals granted Sessums' petition for review, denied the State's petition for review, and in an unpublished opinion reversed our opinion as to the indecency conviction. The court agreed the brief did not mention the indecency conviction, but (relying on counsel's statement at oral argument he intended to also appeal that portion of the conviction) nonetheless directed this Court to construe Sessums' brief liberally and address the unmentioned issue. Accordingly, we now turn to a review of Sessums' conviction for indecency with a child.

### Factual and Procedural Background

As we detailed in our first opinion, the evidence shows that, around July 1, 1999, Jennifer Wallace, J.D.S.'s mother, walked into a bedroom and discovered her five-year-old son, J.D.S., performing oral sex on Charles Ray Woods, the stepfather of her husband, Aaron Wallace.[1] This incident provoked an investigation by Child

---

1. Woods was convicted of sexual assault of a child.

Protective Services (CPS). As part of the investigation, Ron Hamilton, a CPS investigator, interviewed J.D.S. During the interviews, J.D.S. revealed that, in addition to the sexual abuse by Woods, his "pawpaw" had also sexually abused him. J.D.S.'s "pawpaw" was identified as Sessums, his paternal grandfather.

Sue Jennings, a licensed professional counselor and certified sex offender treatment provider, also interviewed J.D.S. According to Jennings, J.D.S. told her his "pawpaw had done some very bad things" like messing with his "private parts" by using his "hands and fingers" and touching his "pee pee" and "bobo" with his "pee pee." Jennings testified that, when J.D.S. said "bobo," she understood this to mean his "bottom."

Based on these interviews, the State charged Sessums with one count of aggravated sexual assault of a child and one count of indecency with a child.

At trial, no medical evidence or eyewitness testimony was adduced. The State's evidence consisted of testimony of four expert witnesses and the testimony of J.D.S.'s step-grandfather, Jim Hale.

Sessums raises five points of error. He stated in his petition to the Texas Court of Criminal Appeals he was not attacking the sufficiency of the evidence as to the indecency conviction, but was relying on his remaining contentions of error. We will thus now address those remaining contentions of error.

## Discussion

Although sufficiency of the evidence is not at issue, we summarize the State's evidence to provide a context for analysis.

The indictment against Sessums for indecency with a child alleged Sessums intentionally or knowingly, with intent to arouse or gratify his sexual desire, engaged in sexual contact by touching part of the genitals or by touching the anus of J.D.S., a child younger than the age of fourteen and not the spouse of the defendant.

Jennings testified J.D.S. told her his "pawpaw" had done "some very bad things" including touching his "pee pee" and "bobo" with his "pawpaw's" "pee pee," and touching his "private parts" with his "pawpaw's" hand and finger. Hamilton and Laura McAndrews, a psychological therapist, also testified that, during their interviews with J.D.S., he revealed that his "pawpaw" had touched his "private parts." In addition to this testimony, Hale, J.D.S.'s step-grandfather, testified that:

> [Hale]: ... I was hooking up to do my dialysis and I asked [J.D.S.] to sit down in peepaw's recliner and he hung his head like this and he said, "I can't, peepaw," and I said why, and he said, "my bobo is sore." I said what, "do you mean your bobo is sore." And he hung his head again and he said, "pawpaw's been playing with it."
>
> [Prosecutor]: Who did you understand him to me [sic] by pawpaw?
>
> [Hale]: Larry Don Sessums, Sr.
>
> [Prosecutor]: When he told you that, what was your reaction?
>
> [Hale]: Very upset and beet red.
>
> [Prosecutor]: What do you understand him to mean when he told you that?
>
> [Hale]: In my own mind, I drew a conclusion that he had been messing with his bobo.
>
> [Prosecutor]: As in spanking him or what?
>
> [Hale]: No.
>
> [Prosecutor]: Was it clearly something other than spanking?
>
> [Hale]: Yes.

[Prosecutor]: What was it clear to you that it was?

[Hale]: In my own words? In my own words, I think he was molesting the child.

In the prior appeal, the State argued that Hale's testimony about a "sore bobo" and a belief that J.D.S. was molested, combined with the testimony of Jennings, Hamilton, and McAndrews that Sessums touched J.D.S.'s "private parts" was legally sufficient evidence on the issue of penetration. We concluded this constituted no evidence of penetration. The Texas Court of Criminal Appeals denied petition on the State's request to address that ruling; thus, in that respect, our opinion is now final.

There is evidence Sessums touched J.D.S.'s "private parts" and "bobo," but the State offered no evidence specifically defining these nontechnical terms. Although Jennings testified that, when J.D.S. said "bobo," she understood him to be referring to his "bottom," no evidence was adduced indicating he was specifically referring to his anus. Without conjecture and speculation, we cannot know to what J.D.S. was referring when he used the terms "bobo," "pee pee," and "private parts."

Moreover, Hale's testimony that J.D.S. had a "sore bobo" does not necessarily equate to a reference to a sore anus.

## Ineffective Assistance of Counsel

In his first and fifth points of error, Sessums contends he received ineffective assistance of counsel. He specifically argues counsel was ineffective because he did not object to (1) expert testimony about J.D.S.'s credibility, (2) improper bolstering, and (3) hearsay. Sessums argues that these failures to object prejudiced him because he received a twenty-year sentence in a case with no physical evidence,

no eyewitnesses, and no testimony from the victim.

The standard of testing claims of ineffective assistance of counsel is set out in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted for Texas constitutional claims in *Hernandez v. State,* 726 S.W.2d 53, 56–57 (Tex.Crim.App.1986). To meet this burden, an appellant must prove that his or her attorney's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for the attorney's deficiency, the result of the trial would have been different. *Tong v. State,* 25 S.W.3d 707, 712 (Tex.Crim.App.2000).

Our review of counsel's representation is highly deferential; we indulge a strong presumption counsel's conduct falls within a wide range of reasonable representation. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052; *Tong,* 25 S.W.3d at 712. This Court will not second-guess through hindsight the strategy of counsel at trial, nor will the fact that another attorney might have pursued a different course support a finding of ineffectiveness. *Blott v. State,* 588 S.W.2d 588, 592 (Tex.Crim.App.1979). That another attorney, including appellant's counsel on appeal, might have pursued a different course of action does not necessarily indicate ineffective assistance. *Harner v. State,* 997 S.W.2d 695, 704 (Tex. App.-Texarkana 1999, no pet.). Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State,* 9 S.W.3d 808, 813 (Tex.Crim.App.1999).

We further recognize that the Texas Court of Criminal Appeals has held that, under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was

so deficient and so lacking in tactical or strategic decision-making as to overcome the presumption that counsel's conduct was reasonable and professional. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex.Crim.App. 2001). In addressing this reality, the court has explained that appellate courts can rarely decide the issue of ineffective assistance of counsel because the record almost never speaks to the strategic reasons trial counsel may have considered. The proper procedure for raising this claim is therefore almost always habeas corpus. *Aldrich v. State*, 104 S.W.3d 890, 896 (Tex. Crim.App.2003); *Freeman v. State*, 125 S.W.3d 505 (Tex.Crim.App.2003). Nevertheless, some claims may be disposed of on direct appeal where "trial counsel's ineffectiveness is so apparent from the record." *Massaro v. United States*, 538 U.S. 500, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003); *Freeman*, at 506–07.

In each instance of the complained-of testimony, Eddie Waggoner, expert psychologist or psychiatrist, Hamilton, CPS investigator, Jennings, psychological therapist, McAndrews, psychological therapist, trial counsel had to choose whether to object to expert testimony concerning the truthfulness of the victim. Counsel did not object to any of the testimony. Counsel on appeal argues this is blatantly ineffective and is so utterly unsupportable and harmful that these errors require reversal.

 Sessums correctly states that expert testimony that a particular witness is truthful is absolutely inadmissible under Rule 702. *See* Tex.R. Evid. 702; *Yount v. State*, 872 S.W.2d 706, 711 (Tex.Crim.App. 1993); *see also Schutz v. State*, 957 S.W.2d 52, 59 (Tex.Crim.App.1997). Behind this bald statement, however, courts have held that an expert's testimony that a child did not exhibit the traits of manipulation is not a direct comment on the truth of the child's allegations and thus is admissible.

*See Schutz*, 957 S.W.2d at 73. Therefore, while an expert is not allowed to directly comment on a complainant's "truthfulness," an expert may testify to behaviors and traits that might be indicia of manipulation. *Id.*

It has also been held that a court may admit expert testimony that a child exhibits behavioral characteristics that have been empirically shown to be common among children who have been abused as substantive evidence under Rule 702. *Perez v. State*, 113 S.W.3d 819, 832 (Tex.App.-Austin 2003, pet. ref'd); *Hitt v. State*, 53 S.W.3d 697, 707 (Tex.App.-Austin 2001, pet. ref'd).

*Application to these facts*

The expert testimony in this case does substantially more than show that the child shows no indicia of untruthfulness or describe characteristics common among sexually abused children.

*The experts*

Waggoner was asked what factors he used to determine if a child was "telling the truth." After describing the factors for truthfulness, the witness was asked, "How does [the victim] fit in those factors?" Waggoner then testified the victim exhibited such factors.

Hamilton was asked what factors he looked at to tell if a child was telling the truth. He then set out those factors. He was then, as above, asked how this particular child fit those factors, and thus whether he believed this child was being truthful in his actions. Hamilton finally testified this child was one of the two percent in which he found a reason to believe the child and therefore referred the case for prosecution.

Jennings testified she looked at specific factors to determine whether the child was credible, and then was asked how this child fit those factors. She did not testify

this child was truthful, but did specify how this child fit into certain behaviors typical for children who had experienced sexual abuse (such as blaming himself or herself, or feeling guilty).

McAndrews was asked whether she used methods to determine whether a child was telling the truth, and focused her testimony on the consistency of the child's testimony. She then testified that his behavior had been consistent all the way through and that this was a "pretty good indication that he's telling the truth."

The witnesses here were asked to explain and then to comment directly on the factors they used in determining if this child was telling the truth. We have previously held that testimony regarding the factors for truthfulness observed by the experts directly comment as to the truthfulness of the child. As such, it does not assist the jury and is inadmissible. Tex.R. Evid. 702; *Edwards v. State*, 107 S.W.3d 107, 116 (Tex.App.-Texarkana 2003, pet. ref'd); *Wilson v. State*, 90 S.W.3d 391, 393 (Tex.App.-Dallas 2002, no pet.) (also finding court erred by allowing testimony about percentage of children who lie about being sexually assaulted).

The observations made by the experts in their testimony in this case are all of the type that can and should be judged and determined by a jury without the help of an expert. In addition, their final conclusions—that the child was being truthful—are clearly inadmissible.

Further, as pointed out by Sessums, in closing arguments the State specifically discussed (without objection) that the child must not be a liar, because he was able to convince all four of these experts he was telling the truth.

He didn't fool all those people. I brought you a bunch of people with years of experience. Every one of them said the kid's telling the truth, he done it. You have got to find that kid is a liar and all those people are fools and don't know what they are doing in order to find him not guilty.

In this case, we find ourselves reviewing the activities of trial counsel in failing to object to clearly and unquestionably objectionable testimony of the most outrageous and destructive type. There is no conceivable strategy or tactic that would justify allowing this testimony in front of a jury.

The Dallas Court of Appeals addressed this same problem over ten years ago in *Miller v. State*, 757 S.W.2d 880, 884 (Tex. App.-Dallas 1988, pet. ref'd). In that opinion, the court concluded that failing to object to the "extensive, inadmissible testimony concerning the only real issue at trial—complainant's credibility" was deficient and resulted in denying the appellant effective assistance of counsel. We find ourselves in agreement with that reasoning.

Thus, we find counsel's performance to be constitutionally inadequate. The remaining question is that of harm. The entire issue before this jury was whether this defendant had sexually abused the victim. In reference to this defendant, the only testimony was about statements made by the victim. Thus, the question of whether the victim was truthful was the ultimate question before the jury. The jury found the defendant guilty and then assessed the maximum punishment. In light of these factors, as in *Miller*, we must likewise agree there is a reasonable probability that, but for counsel's error in failing to object to extensive, inadmissible, and critical testimony, the result of the proceeding would have been different.

### Bolstering

Sessums also contends the experts' testimony constituted improper bol-

stering of the testimony and statements made by the child victim. Bolstering occurs when the sole purpose of testimony is to enhance the credibility of another witness without adding anything to the proof of a relevant fact. *Morales v. State*, 2 S.W.3d 487, 488 (Tex.App.-Texarkana 1999, pet. ref'd). Counsel did object at several points, as set out by the appellant's brief, that the experts' testimony was speculation. That did not preserve the present contention for our review. For a contention to be raised on appeal, it must have been raised at trial by objection. Error is not preserved for review if it varies from the objection. *Ibarra v. State*, 11 S.W.3d 189, 197 (Tex.Crim.App.1999). Accordingly, this argument is not before the Court for review.

 Under this same point of error, counsel also argues the trial court erred by admitting, over his hearsay objection, a letter written by Jennings to the County Attorney's office. We use an abuse of discretion standard when reviewing the trial court's decision to admit evidence. *Torres v. State*, 71 S.W.3d 758, 760 (Tex.Crim.App.2002); *Burden v. State*, 55 S.W.3d 608, 615 (Tex.Crim.App.2001). An appellate court will not reverse a trial court's ruling unless that ruling falls outside the zone of reasonable disagreement. *Torres*, 71 S.W.3d at 760; *Burden*, 55 S.W.3d at 615.

 The letter was written to the prosecutor and was a summary of the treatment given to J.D.S. The State first argues the letter was admissible as a business record under Tex.R. Evid. 803(6). The record indicates it was written in preparation for trial rather than in the regular course of Jennings' business. A letter written in preparation for litigation is not qualified as a business record under Rule 803(6). *See Freeman v. Am. Motorists*

*Ins. Co.*, 53 S.W.3d 710, 714–15 (Tex.App.-Houston [1st Dist.] 2001, no pet.).

 The State also argues the letter qualified as a record of medical diagnosis and was thus admissible under Tex.R. Evid. 803(4). Jennings has a master's degree in counseling psychology, is licensed by the Texas State Board of Examiners of Psychology, and was treating J.D.S. Under the meaning of the rule, she was the type of medical professional to which a statement for the purpose of medical treatment or diagnosis may be made. Thus, we conclude the admission of the letter was, at the least, within the zone of reasonable disagreement and not an abuse of discretion. The contention of error is overruled.

### Testimony about Victim's Prognosis

 Sessums further contends that the testimony by Jennings about the child's long-term prognosis was not relevant and that the court erred in admitting it. *See* Tex.R. Evid. 401. Sessums argues that, because it was undisputed J.D.S. had been sexually abused by at least one person other than he, testimony about his prognosis and future treatment was not probative on the matter of Sessums' guilt.

In support of this position, Sessums directs the Court to *Brown v. State*, 757 S.W.2d 739 (Tex.Crim.App.1988). *Brown* involved a prosecution for rape. In *Brown*, the rape itself was not disputed and the only issue was the validity of the defendant's alibi. *Id.* at 740. The trial court admitted evidence of the victim's two suicide attempts, weight gain, job loss, fear of being outside, and loss of confidence, all of which occurred in the eight months between the rape and the trial. The court of appeals affirmed the admission, and the Texas Court of Criminal Appeals reversed, concluding that the evidence of the victim's emotional difficulty was irrelevant as to

the defendant's alibi—the only issue in the case. *See id.* at 741.

In reviewing relevance, the Texas Court of Criminal Appeals concluded, in line with the language of the rule, that for an item to be relevant, it must logically increase one's knowledge and enhance the likelihood of ascertaining the truth about a fact at issue. *Id.* at 740.

In this case, the fact at issue was whether Sessums—in addition to other abusers—also abused J.D.S. The evidence in dispute was testimony about J.D.S.'s prognosis, treatment, and injuries. Our task is to determine if, under the abuse of discretion guidelines set out above, the trial court could conclude that this evidence either logically enhances or increases the likelihood of ascertaining the truth about whether Sessums abused J.D.S.

We conclude that the evidence about the extent of J.D.S.'s trauma, injuries, and his prognosis is probative circumstantial evidence that tends to show J.D.S. was abused by more than one person. Therefore, it logically increases the possibility that Sessums abused J.D.S., and the court's ruling admitting the evidence was not outside the zone of reasonable disagreement. The contention of error is overruled.

### Conclusion

Because we sustain Sessums' contention he received ineffective assistance of counsel at trial, we reverse the judgment of the trial court and remand the case for a new trial on the indecency with a child charge.