

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-08-00130-CR
_____

KEITH ANTHONY ARCEMENT, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 202nd Judicial District Court
Bowie County, Texas
Trial Court No. 07F0289-202

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

Keith Anthony Arcement appeals his conviction by a jury for aggravated sexual assault of a child. Arcement and his family took refuge from Hurricane Katrina in a hotel in Texarkana, Texas. Arcement and M.B., his step-daughter, shared one bed in the hotel room while Barbara Arcement, Arcement's mother (referred to hereafter as Barbara), and M.B.'s younger sister shared the other bed. When M.B. woke up around three o'clock in the morning, Arcement had his hand under M.B.'s clothing and was pushing his fingers into M.B.'s vagina in a circular motion. Arcement claimed he had been asleep and was not conscious. After finding Arcement guilty, the jury assessed punishment at ten years' imprisonment, but recommended Arcement be placed on community supervision. The trial court sentenced Arcement consistent with the jury's assessment and recommendation. On appeal, Arcement argues the evidence is legally and factually insufficient, the trial court erred in failing to provide a special instruction that the act must have been voluntary, and he received ineffective assistance of counsel. We affirm the judgment.

I.      **The Evidence Is Legally and Factually Sufficient**

In his first issue, Arcement claims the evidence is legally and factually insufficient to support the jury's verdict. According to Arcement, the State failed to contradict the evidence presented at trial that Arcement was asleep when he committed the abuse. Arcement argues the evidence is insufficient to support a finding that his actions were voluntarily committed.

In reviewing the legal sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). In a factual sufficiency review, we review all the evidence, but do so in a neutral light and determine whether the evidence supporting the verdict is so weak or is so outweighed by the great weight and preponderance of the evidence that the jury's verdict is clearly wrong or manifestly unjust. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008); *see Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); *Watson v. State*, 204 S.W.3d 404, 414–15 (Tex. Crim. App. 2006); *see also Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). When reviewing the sufficiency of the evidence, we must evaluate all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *see Neal v. State*, 256 S.W.3d 264, 277 (Tex. Crim. App. 2008).

Section 6.01 of the Texas Penal Code states, "A person commits an offense only if he voluntarily engages in conduct, including an act, an omission, or possession." Tex. Penal Code Ann. § 6.01(a) (Vernon 2003). Conduct is not involuntary "merely because an accused does not intend the result of his conduct." *George v. State*, 681 S.W.2d 43, 45 (Tex. Crim. App. 1984); *see Adanandus v. State*, 866 S.W.2d 210, 230 (Tex. Crim. App. 1993). The Texas Court of Criminal Appeals has described voluntariness as follows:

> "Voluntariness," within the meaning of Section 6.01(a), refers only to one's own physical body movements. If those physical movements are the nonvolitional result

3

of someone else's act, are set in motion by some independent non-human force, are caused by a physical reflex or convulsion, or are the product of unconsciousness, hypnosis or other nonvolitional impetus, that movement is not voluntary.

*Rogers v. State*, 105 S.W.3d 630, 638 (Tex. Crim. App. 2003) (footnotes omitted). Arcement argues that his conduct occurred while he was asleep and therefore was not voluntary action.

Arcement claims the only evidence before the jury was that he was asleep at the time of the abuse. According to M.B., Arcement had been drinking a "good bit" that night.[1] M.B. testified that, when she pushed Arcement's arm off of her, Arcement "just looked at me with like a blank face." Arcement testified, after going to sleep, the next thing he remembered was Barbara yelling his name. When cross-examined by the State, Arcement denied the abuse was intentional and testified, "I don't know if that happened or not. I was actually asleep . . . ." Barbara was watching television when M.B. woke up screaming. Barbara denied seeing any form of abuse and testified that Arcement had been snoring for about an hour before M.B. woke up. When M.B. woke up screaming, Barbara testified:

> She was crying, and she went towards her daddy and she was shaking him. I said, your daddy's sleeping. I've got to wake him up, I've got to wake him up. So she kept trying. I said, well, baby, you're not going to wake him up, Daddy's sound asleep. So, I started hollering his name, and he said what, what? I said, your daughter needs you.

Barbara testified M.B. did not tell her what was wrong until M.B.'s mother arrived to pick her up.

---

[1] Arcement testified, "I don't drink when I have the kids, never have, and, you know, never did."

4

"Because 'voluntarily' means the *absence* of accidental act, omission or possession, it is not a fact that the State must prove in every case." *Alford v. State*, 866 S.W.2d 619, 624 n.8 (Tex. Crim. App. 1993). If the evidence raises the issue of whether the conduct was involuntary, the State must disprove the issue beyond a reasonable doubt. *Id.* Since this case contains some evidence raising the issue of voluntariness, the State was required to disprove the testimony that Arcement was asleep.

To rebut the defensive theories, the State offered some circumstantial evidence that Arcement's conduct had been voluntary. M.B. testified, after the assault, Arcement made her read text messages containing sexual content Arcement had received. Michelle Boudreaux, M.B.'s mother, was called by the State as the outcry witness. Boudreaux testified M.B. told her that, after M.B. came out of the bathroom, Arcement pinned M.B. to the bed and read M.B. sexually explicit text messages Arcement had received from his girlfriend. According to Boudreaux, M.B. claimed Arcement had also threatened to cut off financial support for M.B. and her sister.

In addition, the State introduced evidence of other wrongs or bad acts.[2] Linda Chaisson, M.B.'s great aunt, testified Arcement would slap M.B. on the buttocks and would put his hand on M.B.'s buttocks when they hugged. Missy Stout, a forensic interviewer with the Texarkana Children's Advocacy Center, testified M.B. claimed Arcement would walk in unannounced while M.B. was taking a shower, would discuss M.B.'s breasts with her, would make M.B. wear bathing suits, would suggest M.B. use a conditioner on her pubic hair, and would check to see whether M.B. was wearing a bra at night. M.B. testified Arcement suggested she put conditioner on her pubic hair.

Although Arcement presented evidence that he was asleep when these relevant events took place, the jury, as sole judge of the witnesses' credibility and the weight to be given their testimony, was free to accept or reject any or all of the evidence presented by either side. *See Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). We must give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.

---

[2]We note the Texas Rules of Evidence prohibits the use of other crimes, wrongs, or acts "to prove the character of a person in order to show action in conformity therewith." TEX. R. EVID. 404(b). Such evidence may be admitted for the limited purpose of establishing "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id*. Article 38.37 of the Texas Code of Criminal Procedure permits the introduction of evidence of other crimes, wrongs, or bad acts in order to establish the state of mind of the defendant and the child, as well as the relationship between the defendant and the child. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37 (Vernon Supp. 2008). The defense objected at trial that the potential prejudice of these acts outweighed any probative value. *See* TEX. R. EVID. 403. The trial court excluded some evidence of bad acts offered by the State, but overruled the defense objection to some of the evidence.

Crim. App. 2007). A rational juror could have concluded beyond a reasonable doubt that Arcement acted voluntarily. The evidence is legally sufficient.

"Although an appellate court reviewing factual sufficiency has the ability to second-guess the jury to a limited degree, the review should still be deferential, with a high level of skepticism about the jury's verdict required before a reversal can occur." *Roberts*, 220 S.W.3d at 524. We are unable to reach the high level of skepticism necessary to reverse the jury's verdict. The State's circumstantial evidence is not so outweighed by the great weight and preponderance of the evidence that the jury's verdict is clearly wrong or manifestly unjust. The evidence is factually sufficient. Arcement's first issue is overruled.

## II. The Charge Error Did Not Result in Egregious Harm

Arcement argues, in his second issue, that the trial court erred during the guilt/innocence phase of the trial by submitting to the jury a verdict form permitting the jury to convict Arcement of aggravated sexual assault of a child by contact, not tracking the manner and means of the indictment, and omitting the element of the victim's age.

### A. *Almanza* Standard of Review

In analyzing a jury charge complaint, we first determine whether error exists in the charge and, then, if there was error, whether sufficient harm resulted from the error to compel reversal. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). When error occurs in failing to properly instruct the jury, our review of the charge is under the *Almanza* standard. *Almanza v. State*, 686

7

S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g).  Under *Almanza*, the standard of review for errors in the jury charge depends on whether the defendant properly objected.  *Almanza*, 686 S.W.2d at 171; *see Mann v. State*, 964 S.W.2d 639, 641 (Tex. Crim. App. 1998); *Gornick v. State*, 947 S.W.2d 678, 680 (Tex. App.—Texarkana 1997, no pet.).  If a proper objection was raised, reversal is required if the error is "calculated to injure the rights of defendant."  *Almanza*, 686 S.W.2d at 171. In other words, an error that has been properly preserved is reversible unless it is harmless.  *Id.*  If a defendant does not object to the charge, reversal is required only if the harm is so egregious that the defendant has not had a fair and impartial trial.  *Rudd v. State*, 921 S.W.2d 370, 373 (Tex. App.—Texarkana 1996, pet. ref'd).

B.  **Proper Offense**

Arcement argues the verdict form erred in permitting the jury to convict Arcement of aggravated sexual assault of a child by contact—a charge which, according to Arcement, "does not exist under Texas Law."  The verdict form provided:  "We, the jury, find the defendant, Keith Arcement, guilty of aggravated sexual assault of a child by contact as charged in the indictment." While the trial court placed an improper appellation on the offense charged, ultimately the jury was asked if Arcement was guilty "as charged in the indictment."  The jury heard the indictment read in open court and was instructed as to all of the elements of the crime that the State was required to prove.  By its verdict the jury found, beyond a reasonable doubt, that Arcement had committed each of the necessary elements of the crime of aggravated sexual assault.

8

## C.      Fail to Track Indictment in the Jury Charge

Arcement also argues the charge erred by not tracking the exact language of the manner and means alleged in the indictment. The indictment alleged Arcement committed the offense by "inserting the finger of the defendant into the sexual organ of [M.B.]." The charge, though, alleged Arcement committed the offense by "intentionally or knowingly cause the penetration of the sexual organ of [M.B.] . . . , a child younger than 14 years of age who was not the spouse of the said defendant, by defendant's finger." Although the charge does not track the exact language of the indictment, the charge alleges the same manner and means as the indictment. While normally the best practice is to track the exact language of the indictment, if the jury charge contains all of the elements as required by the indictment, the failure to track the exact language is not error. The application paragraph of the charge, as worded, required the jury to find every factual element alleged in the indictment, including the proscribed conduct. *See Thompson v. State*, 665 S.W.2d 188 (Tex. App.—Houston [1st Dist.] 1984, no pet.) (citing *Olveda v. State*, 650 S.W.2d 408, 410 (Tex. Crim. App. 1983) (Clinton, J., concurring)). We find there is no error in this instance.

## D.      Omission of Age of Victim

Arcement's remaining argument is that the jury charge omitted the required element of the victim's age. The abstract portion of the court's charge provides: "Our law provides that a person commits the offense of aggravated sexual assault if the person intentionally or knowingly causes the penetration of the sexual organ of a child by any means." The charge later defines "child" as "a

9

person younger than seventeen (17) years of age who is not the spouse of the actor." Arcement was charged with aggravated sexual assault of a child under Section 22.021(a)(2)(B), which requires the victim to be "younger than 14 years of age." *See* TEX. PENAL CODE ANN. § 22.021(a)(2)(B) (Vernon Supp. 2008). Because the abstract portion of the court's charge failed to include the element of the victim's age, the charge contained error.

Since Arcement failed to object to the error, we must review the record for egregious harm. There was no dispute at trial concerning the victim's age. In fact, Arcement stipulated in open court that M.B. was under the age of fourteen. Further, the application paragraph of the charge required the jury to find Arcement "intentionally or knowingly cause[d] the penetration of [M.B.] . . . , a child younger than 14 years of age . . . ." In light of the fact that the defendant stipulated the child was under fourteen and the application paragraph required the jury to find the child was under fourteen, the error did not cause egregious harm. Arcement's second issue is overruled.

**III. The Record Does Not Establish That Arcement Received Ineffective Assistance of Counsel**

In his last issue, Arcement claims he received ineffective assistance of counsel because his trial counsel 1) failed to request a special instruction on voluntariness; 2) failed to object to testimony concerning the truthfulness of the child; 3) failed to file a motion for notice of the State's intent to introduce evidence of other crimes, wrongs, or bad acts; 4) failed to request a limiting instruction on the evidence of other crimes, wrongs, or bad acts which was admitted; and 5) failed to object to errors in the court's charge. We will address each argument in turn.

10

### A.    Standard of Review

The standard of testing claims of ineffective assistance of counsel is set out in *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail on this claim, an appellant must prove by a preponderance of the evidence (1) that his or her counsel's representation fell below an objective standard of reasonableness and (2) that the deficient performance prejudiced the defense.  *Id.* at 689; *Rosales v. State*, 4 S.W.3d 228, 231 (Tex. Crim. App. 1999).  To meet this burden, the appellant must prove that the attorney's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for the attorney's deficiency, the result of the trial would have been different.  *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000).  Under this standard, a claimant must prove that counsel's representation so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.  *Strickland*, 466 U.S. at 686.

Our review of counsel's representation is highly deferential, and we indulge a strong presumption that counsel's conduct falls within a wide range of reasonable representation.  *Id.* at 689; *Tong*, 25 S.W.3d at 712.  Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.  *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).  Where an appellate record is silent as to why trial counsel failed to take certain actions, the appellant has failed to rebut the presumption that trial counsel's decision was in some way—be it conceivable or not—reasonable.  *See Mata v. State*, 226 S.W.3d 425, 431

11

(Tex. Crim. App. 2007). The conduct must be "so outrageous that no competent attorney would have engaged in it." *Thompson*, 9 S.W.3d 808; *see Fox v. State*, 175 S.W.3d 475, 485–86 (Tex. App.—Texarkana 2005, pet. ref'd).

**B.      Requested Instruction on Voluntariness**

Arcement first argues his counsel was ineffective for failing to request a special instruction on voluntariness. As discussed above, there is some evidence that Arcement's actions were committed while asleep. As such, Arcement would have probably been entitled to an instruction if he had requested one. *See Brown v. State*, 955 S.W.2d 276, 280 (Tex. Crim. App. 1997). According to Arcement, voluntariness was "the main and only defense presented by Appellant." The record, though, does not support this claim.

As demonstrated by defense counsel's opening and closing statements, the defense presented two defensive theories—that M.B. had fabricated the story and that Arcement was asleep when the abuse occurred. At trial, there was evidence that Arcement and M.B. had a fight earlier that day over M.B.'s boyfriend, who Arcement thought was too old for her, and over a picture containing a "drawn out picture of a guy's private area" that Arcement had seen her viewing on MySpace.[3] In addition, there was evidence Arcement and Boudreaux were in the process of obtaining a divorce. Defense trial counsel suggested, in his closing statement, that M.B. had fabricated the story because she was

---

[3]MySpace is a social networking internet website with "an interactive, user-submitted network of friends, personal profiles, blogs, groups, photos, music, and videos." Wikipedia, the Free Encyclopedia, MySpace, http://en.wikipedia.org/wiki/MySpace (last modified on February 4, 2009).

mad at Arcement. Although the second defensive theory was that Arcement was asleep, the theory was not limited to voluntariness. If Arcement was asleep when the abuse occurred, that fact would affect both the voluntariness requirement and the intent requirement. Aggravated sexual assault requires the actor to commit the act intentionally or knowingly. *See* TEX. PENAL CODE ANN. § 22.021 (Vernon Supp. 2008). "[T]he issue of the voluntariness of one's conduct, or bodily movements, is separate from the issue of one's mental state." *Adanandus*, 866 S.W.2d at 230. The closing statement clearly indicates that trial counsel chose to argue the intent theory rather than the voluntariness theory. During his closing argument, trial counsel stated, "Even if you believe everything the State says, all the evidence the State presented, he had no intent. He didn't do this knowingly."

Although appellate counsel may disagree with trial counsel's strategy, such a disagreement does not render trial counsel's performance deficient. That another attorney, including appellant's counsel on appeal, might have pursued a different course of action does not necessarily indicate ineffective assistance. *Harner v. State*, 997 S.W.2d 695, 704 (Tex. App.—Texarkana 1999, no pet.). This Court will not second-guess through hindsight the strategy of counsel at trial, nor will the fact that another attorney might have pursued a different course support a finding of ineffectiveness. *Blott v. State*, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979). Trial counsel's performance was not deficient for failing to request a special instruction on voluntariness.

13

## C. Failure to Object to Evidence That Child Was Truthful

Arcement argues his trial counsel's performance was deficient for failing to object to testimony that M.B. was being truthful. At trial, the following exchange occurred between the State and Detective Gisela Altamirano:

> Q [Prosecutor]: From your perspective as an investigator with the Texarkana, Texas Police Department, did you observe anything in the child that you believed was an attempt to be deceptive?
>
> A [Altamirano]: No, sir.
>
> Q Did the -- and I know this was a few months later when you actually established contact with the child, but during the course of her giving you this information, could you tell that this had had an emotional impact on this child?
>
> A Yes, sir. Based on my experience and training, due to the fact that her story stayed consistent even after several months of the incident occurring, I felt she was telling the truth.

Texas law is well established that "a direct opinion on the truthfulness of the child" is inadmissible evidence. *Yount v. State*, 872 S.W.2d 706, 708 (Tex. Crim. App. 1993); *Sessums v. State*, 129 S.W.3d 242, 247 (Tex. App.—Texarkana 2004, pet. ref'd); *see* TEX. R. EVID. 701, 702. A direct comment on a complainant's "truthfulness" is "absolutely inadmissible." *Sessums*, 129 S.W.3d at 247; *see Warren v. State*, 236 S.W.3d 844, 849 (Tex. App.—Texarkana 2007, no pet.).

Because Altamirano explicitly based the opinion on her experience and training, Arcement argues she was an expert witness. The State argues, because Altamirano was not an expert witness, she could express an opinion concerning the child's truthfulness. Whether Altamirano was an expert

14

witness is irrelevant. The prohibition of testimony concerning another witness' truthfulness "applies to expert and lay witness testimony alike." *Blackwell v. State*, 193 S.W.3d 1, 21 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd); *see* TEX. R. EVID. 701. While such testimony is more egregious when the opinion is expressed by an expert, testimony of a lay witness poses many of the same concerns as an expert's testimony. It is the jury's role to determine the credibility of a witness. Thus, Altamirano's testimony concerning M.B.'s credibility was inadmissible regardless of whether Altamirano was an expert witness.

Even if we conclude that counsel's performance was deficient in failing to object to this testimony, we should not reverse unless we also conclude the deficient performance prejudiced the defendant and there is a reasonable probability that, but for the attorney's deficiency, the result of the trial would have been different. *Tong*, 25 S.W.3d at 712. In the prejudice question, we examine counsel's errors not as isolated incidents, but in the context of the overall record. In respect to prejudicing Arcement, this case is distinguishable from our opinion in *Sessums* In *Sessums*, the State elicited opinions concerning truthfulness from four expert witnesses. *Sessums*, 129 S.W.3d at 248. The State, also, emphasized the experts' opinions in its closing argument. *Id.* Arcement has directed us to only one witness from whom the State elicited an opinion about M.B.'s truthfulness. The State did not emphasize the testimony in its closing statement. Although trial counsel should have objected to the testimony, after examining the overall record, we do not find that, but for such omission, there is a reasonable probability that the result of the trial would have been different.

15

**D.** **Failure to Request Notice of Prior Bad Acts**

Arcement next argues that his counsel rendered deficient performance by failing to request notice of the State's intent to introduce evidence of other crimes, wrongs, or bad acts pursuant to Article 38.37 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37. The State claims trial counsel had been provided notice of its intent, but concedes the record does not reflect that notice had been given. In the absence of direct evidence of counsel's reasons for the challenged conduct, an appellate court will assume a strategic motive if any can be imagined. *Garcia v. State*, 57 S.W.3d 436, 441 (Tex. Crim. App. 2001). The reason for failing to request this information is not in the record; if the attorney had informally received the same information without the necessity of filing a motion, it would not be necessary or helpful to do so. We should not impose on attorneys the duty to file motions for information already in their possession when the only purpose of the motion would be their own protection from allegations of ineffective assistance of counsel. Since there may have been strategic motives for not requesting such notice and there is no direct evidence of counsel's reasons, we must presume trial counsel's failure to request notice was strategic. Trial counsel was not deficient for failing to request notice under Article 38.37.

**E.** **Limiting Instruction**

Fourth, Arcement claims his trial counsel's performance was deficient by failing to request a limiting instruction to the evidence of other crimes, wrongs, or bad acts. As noted above, Arcement's trial counsel objected to this evidence at trial, and the trial court admitted some of the

16

evidence over the defense's objection. Since the court overruled the defense counsel's objection to the evidence of the bad acts that was admitted, counsel preserved the Rule 403 issue for appeal. Arcement argues counsel's performance fell below the objective standard of reasonableness by failing to request a limiting instruction to testimony trial counsel believed was not admissible. When evidence is admissible for one purpose, but not admissible for all purposes, Rule 105(a) of the Texas Rules of Evidence requires, upon proper request, a limiting instruction be given. TEX. R. EVID. 105(a); *Hammock v. State*, 46 S.W.3d 889, 893 (Tex. Crim. App. 2001). While Arcement may have been entitled to a limiting instruction if one had been requested, the record does not establish the failure to request such an instruction constituted deficient performance. The record in this case is silent as to trial counsel's reasons for not requesting a limiting instruction. Counsel may have decided that a limiting instruction was not necessary or helpful. During the closing argument, trial counsel criticized the State for "[dredging] up everything you can dredge up" and argued all of these bad acts were typical of interactions between close family members. Because the failure to request a limiting instruction may have been strategic, trial counsel's performance, in the absence of direct evidence of counsel's reasons, was not deficient.

### F.      Failure to Object to Charge

Arcement's last complaint is that trial counsel's performance was deficient for failing to object "to the charge of the court as to the incorrect definition of aggravated sexual assault of a child, the incomplete application paragraph and the incorrect form of verdict." Although raised in the point

of error, containing multiple complaints, Arcement failed to brief this argument on appeal. We presume Arcement is referring to arguments raised in his second issue discussed above. As discussed above, the only error in the charge was the omission of the age requirement. Since there was no dispute concerning the age of the victim, trial counsel's performance was not deficient for failing to object to the court's charge. Arcement's third issue is overruled.

For the reasons stated, we affirm the judgment of the trial court.


Jack Carter
Justice

Date Submitted:     February 13, 2009
Date Decided:     February 18, 2009

Do Not Publish