TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-11-00716-CR

NO. 03-11-00717-CR






Kendall Ryan Brown, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT

NO. 64916 & 66117, THE HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 In cause number 03-11-00716-CR, appellant Kendall Ryan Brown appeals the trial
court's judgment revoking his community supervision for burglary of a habitation and sentencing
him to ten years' confinement in the Institutional Division of the Texas Department of Criminal
Justice. In cause number 03-11-00717-CR, Brown appeals the trial court's judgment revoking his
community supervision for robbery and sentencing him to ten years' confinement in the Institutional
Division of the Texas Department of Criminal Justice. In a single point of error, Brown asserts that
his counsel rendered ineffective assistance at the revocation hearing. (1) We affirm the judgments
of revocation.


BACKGROUND

 In May 2010, pursuant to a plea bargain, Brown pled guilty to the felony offenses of
burglary of a habitation and robbery. (2) See Tex. Penal Code Ann. §§ 29.02, 30.02 (West 2011). In
accordance with the plea bargain, he was sentenced to ten years in the Institutional Division of the
Texas Department of Criminal Justice for each offense with the trial court's recommendation that
he participate in the State Boot Camp Program. See Tex. Code Crim. Proc. Ann. art. 42.12, § 8
(West Supp. 2012); Tex. Gov't Code Ann. § 499.052 (West 2012). In October 2010, after successful
completion of boot camp, the trial court suspended further imposition of the ten-year sentences and
placed Brown on community supervision for a period of ten years for each of the offenses. See Tex.
Code Crim. Proc. Ann. art. 42.12, § 3 (West Supp. 2012), § 8.

 In August 2011, the State filed motions to revoke community supervision in each case
alleging numerous violations, including testing positive for drugs on multiple occasions, failing to
report a change of address, failing to report to his supervision officer, failing to attend or complete
various court-ordered habilitation/rehabilitation programs, failing to maintain employment, failing
to complete community service work, and failing to pay various fees and court costs.

 At the revocation hearing, the trial court heard both motions to revoke during the
same proceeding. Brown pled true to all but three of the allegations contained in each of the motions
to revoke. These three allegations, identical in the two motions, were then abandoned by the State. 
The State then offered Brown's judicial confession in each case wherein he admitted to violating the
conditions of community supervision. Neither party presented any additional evidence. Brown
requested the opportunity to go to SAFPF (Substance Abuse Felony Punishment Facility), see Tex.
Gov't Code Ann. § 493.009 (West 2012); see also Tex. Code Crim. Proc. ann. 42.12, § 14 (West
Supp. 2012) (describing Substance Abuse Felony Program as condition of community supervision),
to address his drug and alcohol problem. The State argued that further rehabilitative efforts were
unwarranted. The trial court found that Brown had violated the conditions of supervision as alleged
and granted the State's motions to revoke. The court revoked each of Brown's community
supervision terms and sentenced him to serve the balance of the previously imposed ten-year
sentences, ordering the sentences to run concurrently. See Tex. Code Crim. Proc. Ann. art. 42.12,
§ 23 (West Supp. 2012).

 Brown subsequently filed identical motions for new trial in each case alleging
ineffective assistance of counsel at the revocation hearing. Following a hearing, the trial court
denied the motions. These appeals of the revocations followed.


DISCUSSION

 In his sole point of error, Brown asserts that his trial counsel was ineffective for
failing to call character witnesses at the revocation hearing. At the hearing on the motions for new
trial, two witnesses testified: Brown's mother and a potential future employer. Brown argues on
appeal that these witnesses were available to testify at the punishment portion of the revocation
hearing about his mental health problems and employment opportunities. He maintains that his
counsel was ineffective for failing to call them to testify as mitigating witnesses.

 Defendants have a right to counsel at a community supervision revocation hearing. 
Tex. Code Crim. Proc. Ann. art. 42.12, § 21(d) (West Supp. 2012); Ex parte Doan, 369 S.W.3d 205,
210 (Tex. Crim. App. 2012); Hatten v. State, 71 S.W.3d 332, 333 n.1 (Tex. Crim. App. 2002) (citing
Ruedas v. State, 586 S.W.2d 520 (Tex. Crim. App. 1979)). "The right to counsel requires more than
the presence of a lawyer; it necessarily requires the right to effective assistance." Lopez v. State,
343 S.W.3d 137, 142 (Tex. Crim. App. 2011). The right does not, however, provide a right to
errorless counsel, but rather to objectively reasonable representation. Id. (citing Strickland
v. Washington, 466 U.S. 668, 686 (1984)).

 To establish ineffective assistance of counsel, an appellant must demonstrate by a
preponderance of the evidence both deficient performance by counsel and prejudice suffered by the
defendant. Strickland, 466 U.S. at 687; Menefield v. State, 363 S.W.3d 591, 592 (Tex. Crim. App.
2012). Under the first prong, the appellant must demonstrate that counsel's performance fell below
an objective standard of reasonableness under prevailing professional norms. Strickland, 466 U.S.
at 687-88; Ex parte Lane, 303 S.W.3d 702, 707 (Tex. Crim. App. 2009). To meet the second prong,
the appellant has to show the existence of a reasonable probability--one sufficient to undermine
confidence in the outcome--that but for counsel's deficient performance, the result of the proceeding
would have been different. Strickland, 466 U.S. at 694; Lane, 303 S.W.3d at 707. Failure to make
the required showing of either deficient performance or sufficient prejudice defeats the
ineffectiveness claim. Strickland, 466 U.S. at 700; see Perez v. State, 310 S.W.3d 890, 893 (Tex.
Crim. App. 2010).

 The burden is on the appellant to affirmatively demonstrate that counsel's errors were
so serious as to deprive the defendant of a fair proceeding whose result is reliable. See Perez,
310 S.W.3d at 893 (citing Strickland, 466 U.S. at 687). To overcome the presumption that counsel
rendered adequate assistance, the appellant must identify the specific acts or omissions of counsel
that allegedly constitute ineffective assistance and then affirmatively prove that they fall below the
professional norm for reasonableness. Strickland, 466 U.S. at 690; Bone v. State, 77 S.W.3d 828,
835 (Tex. Crim. App. 2002). "'The fact that another attorney may have pursued a different tactic
at trial is insufficient to prove a claim of ineffective assistance.'" Ex parte Miller, 330 S.W.3d 610,
616 (Tex. Crim. App. 2009) (quoting Scheanette v. State, 144 S.W.3d 503, 509 (Tex. Crim. App.
2004)); see Sessums v. State, 129 S.W.3d 242, 246 (Tex. App.--Texarkana 2004, pet. ref'd). Even
if an appellant shows that particular errors of counsel were unreasonable, the appellant must further
show that they actually had an adverse effect on the defense. Strickland, 466 U.S. at 693-95;
Cochran v. State, 78 S.W.3d 20, 24 (Tex. App.--Tyler 2002, no pet.). Merely showing that the
errors had some conceivable effect on the proceedings will not suffice. Strickland, 466 U.S. at 693;
Martinez, 330 S.W.3d at 901. The benchmark for judging any claim of ineffectiveness is whether
counsel's conduct so undermined the proper functioning of the adversarial process that the
proceeding cannot be relied on as having produced a just result. Strickland, 466 U.S. at 686.

 The decision about whether to present witnesses is largely a matter of trial strategy. 
Lair v. State, 265 S.W.3d 580, 594 (Tex. App.--Houston [1st Dist.] 2008, pet. ref'd). Here, counsel
testified at the hearing on the motions for new trial, that he believed the better strategy to employ
given the numerous violations by his client was "the least said the better" approach. He expressed
concerns about witnesses being subject to cross-examination and a preference for "relying on the
presentence investigation, which pretty well had everything in it." Counsel further indicated that he
did not feel that calling his client's mother to testify would be helpful. First, he testified that in his
experience--34 years as a practicing attorney--he did not find testimony from a defendant's mother
to be "particularly beneficial." (3) Second, counsel testified that the information about his client's
mental health issues was already before the court in the PSI reports. In addition, the record reveals
that counsel's strategy was to focus on his client's need for substance abuse treatment, based on
evidence already before the court, rather than explanations or excuses for his failure to comply with
the conditions of his community supervision. The fact that this strategy ultimately proved
unsuccessful does not render counsel's assistance ineffective.

 Further, an attorney's decision not to present particular witnesses may be a
strategically sound decision if the attorney bases it on a determination that the testimony of the
witnesses may be harmful, rather than helpful, to the defendant. See id.; Shanklin v. State,
190 S.W.3d 154, 164 (Tex. App.--Houston [1st Dist.] 2005), pet. dism'd, improvidently granted,
211 S.W.3d 315 (Tex. Crim. App. 2007). Here, counsel expressed concerns about Brown's mother
as a witness because she would be subject to cross-examination which, he felt, could potentially be
detrimental "under these particular circumstances"--the circumstances being that his client was on
probation for two serious felony offenses and then almost immediately upon release from custody
started testing positive for drugs and stopped reporting to his supervision officer. In fact, while
Brown's mother testified at the hearing on the motions for new trial about his mental health issues,
she also indicated that Brown failed to participate in the court-ordered treatment programs because,
she felt, he did not have the financial resources to pay the program fees--suggesting that his mental
health issues were not the reason for his non-compliance. However, the record also suggests that
Brown bore no costs for some of the court-ordered programs he failed to participate in or complete. 
In addition, Brown's mother asked for her son to have another chance on community supervision
"being that his support system have (sic) changed." Yet, the record reflects that before he absconded
from community supervision, Brown was living with his mother. Indeed, the record reflects that
Brown's mother was present at the sentencing hearing when Brown was placed on community
supervision after completing boot camp. At that time, she requested that living with her be a
condition of her son's community supervision so she could monitor him. Nevertheless, the record
further reflects that she contacted her son's community supervision officer to advise her that she had
moved and that her son still lived with her, but that she did not see him often. Accordingly, her
testimony does not necessarily demonstrate a change in support systems warranting another chance. 
We find that counsel could have reasonably concluded that Brown's mother as a witness was as
potentially dangerous as she was potentially helpful.

 Moreover, the failure to call witnesses "is irrelevant absent a showing that such
witnesses were available and appellant would benefit from their testimony." (4) See Perez, 310 S.W.3d
at 894 (quoting King v. State, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983)). While it is true that
Brown's mother and potential future employer may have been able to provide some potentially
mitigating information, their testimony could just as easily have harmed Brown because the evidence
they offered revealed that Brown had a support system available but still failed to comply with the
conditions of community supervision. Counsel may well have determined that mitigation evidence
of the type offered at the motion for new trial hearing would not have convincingly shown that
Brown's violations warranted mercy. Or, counsel may have felt that such evidence would not have
been beneficial because it undermined his client's attempt to take responsibility for his conduct and
his ensuing request for substance abuse treatment.

 Furthermore, as counsel noted at the hearing on the motions for new trial, the record
before the court did in fact contain evidence of Brown's mental health issues. The PSI reports
indicated that Brown was taking medications for bipolar disorder and attention deficit hyperactive
disorder. The supervision plan included the community supervision officer's recommendation
that Brown's supervision include psychological screening and/or counseling at University of
Mary Hardin-Baylor and then MHMR, if necessary. The trial court's awareness of Brown's mental
health issues is further demonstrated by the fact that the court ordered Brown to take his medications
as prescribed and to participate in and successfully complete outpatient treatment as conditions of
his community supervision. (5) In his pleas of true, Brown admitted his failure to comply with these
conditions. Thus, exposing his client's mother to cross-examination to present evidence
already before the court may not necessarily have been beneficial or helpful in obtaining the
treatment sought.

 Brown asserts that the testimony of his potential future employer would have shown
that "[he] would have been able to become current on the financial aspect of his community 
supervision if he had been continued on community supervision and been able to go work [for this
witness]." However, Brown did not raise the inability to pay as a defense to his failure to meet his
financial obligations. Further, the record reflects that Brown pled not true to allegations related to
his failure to maintain employment because, as explained by trial counsel, he was in fact employed
during the time period in question. Thus, the trial court had information concerning Brown's
employment. Brown merely speculates that testimony about a potential job opportunity that was,
in the witness's opinion, "better than flipping burgers" might have been beneficial.

 Based on the testimony presented at the hearing on the motions for new trial, we are
not convinced that Brown necessarily would have benefitted from the testimony of these two
witnesses. Furthermore, we do not see a reasonable probability that the testimony of these two
witnesses would have changed the result of Brown's revocation hearing. (6) Brown's pleas of true to
the allegations in the motions to revoke, about which he does not now complain, were sufficient
to support the trial court's revocation of his community supervision terms. (7) See Moore v. State,
605 S.W.2d 924, 926 (Tex. Crim. App. 1980); Atchison v. State, 124 S.W.3d 755, 758 (Tex.
App.--Austin 2003, pet. ref'd). Accordingly, we hold that Brown failed to show a reasonable
probability that the end result of revocation would have been different. 

 Brown's ineffective-assistance claim fails because he has not met his burden under
either prong of Strickland. There is no evidence in the record that there was mitigating evidence for
counsel to present that was not already before the court in some way or that counsel's decision not
to present such evidence via "live testimony" in order to avoid exposure to potentially damaging
cross-examination was not sound trial strategy. Further, there is nothing in the record to suggest that
but for counsel's alleged failure to call these two witnesses, there is a reasonable probability the
outcome of the proceedings would have been different. Brown's sole point of error on appeal
is overruled.



CONCLUSION

 Brown has failed to demonstrate either deficient performance or sufficient prejudice. 
Thus, he has not established that he suffered ineffective assistance of counsel. Accordingly, we
affirm the trial court's judgements revoking his community supervision.


 __________________________________________

 Melissa Goodwin, Justice

Before Justices Puryear, Henson and Goodwin

Affirmed

Filed: September 28, 2012

Do Not Publish

1. Brown filed separate briefs in each of these appeals. However, he raises the same point
of error in each case. Because these revocation proceedings were joined in the trial court below and
Brown challenges the same conduct of his counsel in both cases, we address his points of error
together as a single point here.
2. In the robbery case, Brown was charged by indictment with aggravated robbery. The plea
bargain entailed Brown's plea to the lesser-included-offense of robbery.
3. The record reflects that the judge who revoked Brown's community supervision terms was
the same judge who placed Brown on community supervision after he completed boot camp. The
record of that sentencing hearing shows that the judge admonished Brown about making the
necessary changes in his behavior. Specifically, the court noted that "[y]our mom can plead and cry
and the Court can give you things to do, but the only one that's going to change your life is you[.]"
This supports counsel's belief that pleas from a defendant's mom after repeated failures to take
responsibility for his actions may not be beneficial to a defendant.
4. In evaluating ineffective-assistance claims for the failure to call witnesses, the court of
criminal appeals has held that "the failure to call witnesses at the guilt-innocence and punishment
stages is irrelevant absent a showing that such witnesses were available and appellant would benefit
from their testimony." Perez v. State, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010) (quoting King
v. State, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983)). We believe the principle underlying this rule
applies to the failure to call witnesses at a revocation hearing.
5. During Brown's sentencing hearing, the judge specifically reviewed the conditions of
supervision related to Brown's mental health issues and his need for treatment with Brown. 
6. We note that the trial court judge who conducted the hearing on the motions for new trial
was the same judge who presided over the revocation hearing and revoked Brown's community
supervision terms. Yet, after hearing the mitigating character evidence presented at the motion for
new trial hearing, she did not opt to grant the motion for new trial.
7. Brown does not contend that his counsel's ineffective assistance rendered his pleas of
true involuntary.