

# IN THE
# TENTH COURT OF APPEALS

## No. 10-11-00296-CR

**RUSSELL OLIN BEARD,**

                                                                        **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                                        **Appellee**

**From the 54th District Court
McLennan County, Texas
Trial Court No. 2010-513-C2**

## MEMORANDUM  OPINION

Russell Olin Beard was indicted on four counts of sexual assault of a child.  The jury convicted Beard on all four counts, found the enhancement paragraphs to be true, and assessed punishment at confinement for life on each count.  The trial court ordered the sentences to run consecutively.  We modify the trial court's judgments and  affirm as modified.

**Background Facts**

There is no challenge to the sufficiency of the evidence. M.E. testified at trial that she met Beard when she was fifteen years-old through his daughter, Vanessa. Vanessa told M.E. that her dad wanted to get to know M.E. M.E. testified that she and Beard began having sex and that he gave her drugs, clothes, and money. M.E. stated that she and Beard had sex multiple times.

Beard testified at trial that he first met M.E. when she went with his family to watch fireworks. He stated that M.E. stayed the night at his house one time and that she went to Wal Mart with his family on one occasion. Beard denied having sex with M.E.; however, he admitted smoking marijuana with her.

**Admission of Testimony**

In his first issue, Beard complains that the trial court erred in admitting the testimony of Investigator Adbon Rodriguez and Detective Brent Belcher. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005). "Under an abuse of discretion standard, an appellate court should not disturb the trial court's decision if the ruling was within the zone of reasonable disagreement." *Bigon v. State*, 252 S.W.3d 360, 367 (Tex. Crim. App. 2008).

Investigator Rodriguez testified that he was investigating another crime in which M.E. was the victim. That crime also involved a sexual offense. During his interview of M.E., Investigator Rodriguez asked if she had had sex with anyone else. The State asked the investigator if M.E. gave him the name of another person. Beard's attorney

objected based upon hearsay, and the State responded that it was asking only for the name to show how the investigation began. The Court allowed the question. Investigator Rodriguez testified that M.E. told him that she had sex with Beard. Investigator Rodriguez stated that M.E. provided details about the incident with Beard and that he turned over the information to the Waco Police Department.

The State asked Investigator Rodriguez if M.E. seemed to be vindictive and attempting to get someone in trouble. Investigator Rodriguez stated that she did not. The trial court overruled Beard's objection to the question.

The State then called Detective Belcher to testify. The State asked Detective Belcher how he came to investigate the case involving M.E. Detective Belcher stated that he received information from Investigator Rodriguez that M.E. said she had sex with Beard. Beard's attorney objected to hearsay, and the State responded that it was not offered for the truth but as information acted on. The trial court overruled the objection, and Detective Belcher testified that he received information that Beard paid M.E. $100 for sex.

Detective Belcher interviewed M.E., and she gave him information that he was able to corroborate concerning her involvement with Beard. Detective Belcher also testified that he talked to Beard, and he denied having sex with M.E. Beard was later interviewed at the District Attorney's office. At that time, Beard stated that he had dreamed about M.E. and that he fantasized about her. Beard further stated that M.E. might have come into his room while he was sleeping and touched him.

Beard argues that the testimony of Investigator Rodriguez and Detective Belcher was impermissible hearsay and contained "unnecessary overly prejudicial details." Extra-judicial statements are not inadmissible hearsay when offered to explain how the defendant became a suspect and not for the truth of the matter asserted. *See Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995); *Jones v. State*, 843 S.W.2d 487 (Tex. Crim. App. 1992). Moreover, M.E. testified at trial that she had sex with Beard. Any error in admitting evidence is cured when the same evidence is admitted elsewhere without objection. *Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004); *see also Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998). We overrule the first issue on appeal.

## Outcry Testimony

In his second issue, Beard argues that the trial court erred in allowing Detective Belcher to testify as an outcry witness because the trial court did not conduct a reliability hearing, M.E. was too old for the outcry statute to apply, and the outcry did not sufficiently describe the charged conduct. Detective Belcher testified that after receiving the information from Investigator Rodriguez, he went to interview M.E. because she was the victim making the "outcry" and it was important to get the facts from her. Detective Belcher also testified that the initial "outcry" statement is "what really happened." Detective Belcher described M.E.'s demeanor when talking about Beard, but did not give details about what M.E. told him. After interviewing M.E., Detective Belcher "gathered" that she had a sexual relationship with Beard.

Beard contends that the trial court erred in allowing Detective Belcher to testify as an outcry witness pursuant to TEX. CODE CRIM. PRO. ANN. art. 38.072 (West Supp. 2011). Detective Belcher stated that he received information from Investigator Rodriguez that M.E. said she had sex with Beard. Beard's trial attorney objected to that testimony as hearsay. Detective Belcher did not testify about any details M.E. told him about the alleged offense only that he "gathered" from talking to M.E. that she had a sexual relationship with Beard. There was no objection to that testimony. Detective Belcher referred to M.E. making an "outcry" statement; however Detective Belcher did not testify as an outcry witness. Moreover, Beard did not object to Detective Belcher's testimony about his interview with M.E. *See* TEX. R. APP. P. 33.1. We overrule the second issue.

## Improper Bolstering

In his third issue, Beard complains that the trial court erred in allowing the State to improperly bolster the testimony of M.E. Bolstering has been defined as "any evidence the sole purpose of which is to convince the factfinder that a particular witness or source of evidence is worthy of credit, without substantively contributing 'to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.' " *Rivas v. State*, 275 S.W.3d 880, 886 (Tex. Crim. App. 2009)(quoting *Cohn v. State*, 849 S.W.2d 817, 819 (Tex. Crim. App. 1993)).

Beard first complains that Investigator Rodriguez's testimony improperly bolstered the testimony of M.E. The State asked Investigator Rodriguez whether M.E.

appeared to be vindictive and trying to get someone in trouble. Beard's attorney objected that Investigator Rodriguez was not qualified to give that opinion. The trial court allowed Investigator Rodriguez to testify to his observations of M.E.'s attitude, and he stated that M.E. was not vindictive. The State then asked if he had any other opinion about M.E.'s tone and behavior. Investigator Rodriguez responded that he believed the information she provided was true. Beard did not object to that testimony.

M.E. had not yet testified, and therefore, her credibility had not been impeached. Beard complains on appeal that Investigator Rodriguez's testimony improperly bolstered M.E.'s credibility. Because his complaint at trial that Investigator Rodriguez was not qualified to testify on M.E.'s motivation and attitude does not comport with his bolstering argument raised on appeal, he has not preserved his complaint for review. TEX. R. APP. P. 33.1; *Maes v. State*, 275 S.W.3d 68, 72 (Tex. App.—San Antonio 2008, no pet.).

Beard next complains that Detective Belcher's testimony improperly bolstered the credibility of M.E. The State asked Detective Belcher why it is important to get a written statement from a victim, and he responded to get the victim's version of what happened without "putting words in their mouths." Detective Belcher further stated that the first outcry is "the correct statement on what happened" and the most reliable. Detective Belcher also testified that he was able to corroborate information M.E. provided to him. The State later asked Detective Belcher whether there was a motive for M.E. to make up the allegations against Beard, and he responded that there was no motive.

We do not find that Detective Belcher's testimony on the importance of getting a written statement bolstered the credibility of M.E. Moreover, Detective Belcher's testimony that he corroborated information he received from M.E. was not improper bolstering. Beard did not object to Detective Belcher's statement that M.E. did not have a motive to make up the allegations and has not preserved that complaint for review. TEX. R. APP. P. 33.1.

Beard's next complaint on improper bolstering concerns the testimony of Dr. William Lee Carter. Dr. Carter first had contact with M.E. when she was thirteen years-old based upon events unrelated to the present case. Dr. Carter became aware at that time of allegations that M.E. was sexually abused by her uncle. During the trial of the present case, the State asked Dr. Carter whether he found M.E.'s statements about her uncle to be reliable. Beard's trial counsel objected, and the trial court allowed the question. Dr. Carter stated that "CPS uses the term 'reason to believe' … and that would be the phrase I would use as well."

The State then asked if Dr. Carter saw any "red flags" in this case that M.E. was making up the allegations or had an unfair motive. Beard's trial attorney objected that the question was outside of the bounds of Dr. Carter's expert testimony. Dr. Carter responded that "there's reason to believe that her words should be taken seriously." Dr. Carter further stated that he is not the "trier of facts" and that he is not the one who decides "yes or no, it did or didn't happen."

A direct opinion on the truthfulness of the child, from either a lay witness or an expert witness, is inadmissible. *Yount v. State*, 872 S.W.2d 706, 708 (Tex. Crim. App.

1993); *Sessums v. State*, 129 S.W.3d 242, 247 (Tex. App.—Texarkana 2004, pet. ref'd). An expert may, however, testify to behaviors and traits that might constitute indicia of manipulation. *Schutz v. State*, 957 S.W.2d 52, 70 (Tex. Crim. App. 1997). Dr. Carter did not give a direct opinion on the truthfulness of M.E., but rather stated that it was not for him to determine if M.E. was telling the truth.

Beard also complains that the trial court erred in admitting the testimony of Investigator Don Marshall. Investigator Marshall testified that he had interviewed approximately 400 to 500 sex offenders. He said that statements Beard made during the interview were consistent with those made by other sex offenders he has interviewed. Investigator Marshall further stated that generally when a person is telling the truth his "story doesn't change." Beard specifically complains that Investigator Marshall was allowed to testify that Beard is a sex offender and a liar. Beard did not object to Investigator Marshall's testimony, and he has not preserved his complaint for review. TEX. R. APP. P. 33.1. We overrule Beard's third issue.

### Ineffective Assistance of Counsel

In his fourth issue, Beard complains that he received ineffective assistance of counsel. To prevail on a claim of ineffective assistance of counsel, an appellant must meet the two-pronged test established by the U.S. Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and adopted by Texas two years later in *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). Appellant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense. *Strickland*

*v. Washington*, 466 U.S. at 689, 104 S.Ct. 2052. Unless appellant can prove both prongs, an appellate court must not find counsel's representation to be ineffective. *Id.* at 687, 104 S.Ct. 2052.

In order to satisfy the first prong, appellant must prove, by a preponderance of the evidence, that trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms. *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). To prove prejudice, appellant must show that there is a reasonable probability, or a probability sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different. *Id*.

An appellate court must make a strong presumption that counsel's performance fell within the wide range of reasonably professional assistance. *Id*. In order for an appellate court to find that counsel was ineffective, counsel's deficiency must be affirmatively demonstrated in the trial record; the court must not engage in retrospective speculation. *Id*. "It is not sufficient that appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence." *Lopez v. State*, 343 S.W.2d at 142-3. When such direct evidence is not available, we will assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined. *Lopez v. State*, 343 S.W.2d at 143. In making an assessment of effective assistance of counsel, an appellate court must review the totality of the representation and the circumstances of each case without the benefit of hindsight. *Id*.

The Court of Criminal Appeals has stated that claims of ineffective assistance of counsel are generally not successful on direct appeal and are more appropriately urged in a hearing on an application for a writ of habeas corpus. *Id*. On direct appeal, the record is usually inadequately developed and "cannot adequately reflect the failings of trial counsel" for an appellate court "to fairly evaluate the merits of such a serious allegation." *Id*. Unlike other claims rejected on direct appeal, claims of ineffective assistance of counsel rejected due to lack of adequate information may be reconsidered on an application for a writ of habeas corpus. *Id*.

Beard argues that his trial counsel was ineffective in failing to preserve error in the admission of evidence discussed in issues one, two, and three. Beard's trial counsel made several relevant objections during the testimony of Investigator Rodriguez, Detective Belcher, and Dr. Carter. Investigator Rodriguez and Detective Belcher's testimony about how they began investigating the case was not inadmissible hearsay. Further, we found that Detective Belcher did not testify as an outcry witness. Beard also complains that his trial counsel was ineffective in failing to object to Dr. Carter's testimony that Beard "groomed" M.E. for sexual purposes. Trial counsel objected to the complained of testimony, and the objection was sustained.

Beard denied committing the offense and presented evidence that he did not engage in sexual activity with M.E. Beard testified at trial that he was physically unable to engage in a sexual relationship with M.E. Beard further presented evidence that M.E. inaccurately described physical characteristics of his body, including the location of various tattoos, that would have been apparent to her if they had a sexual relationship.

Beard has not shown that trial counsel's decisions were not based upon sound trial strategy. Beard further has not shown that any errors on the part of his trial counsel prejudiced his defense as to undermine confidence in the outcome. M.E. testified at trial to the same statements she made to Investigator Rodriguez and Detective Belcher and that she had a sexual relationship with Beard. Beard's statements to the police were admitted at trial where he admitted to fantasizing and dreaming about M.E. Beard testified at trial and admitted to smoking marijuana with M.E. Beard has not shown that he received ineffective assistance of counsel. We overrule the fourth issue.

**Assessment of Fees**

In his fifth issue Beard contends that because he is indigent, the trial court erred in assessing court-appointed attorney's fees and court-appointed investigator fees. The State concedes that there is insufficient evidence to support the assessment of court-appointed attorney's fees and investigator fees. We sustain Beard's fifth issue.

In his sixth issue, Beard complains that trial court erred in signing four separate "withdrawal orders" directing the Texas Department of Criminal Justice to withdraw funds from his inmate account. Beard contends that he could be required to pay the costs four times. Proceedings to withdraw funds from inmate accounts are civil in nature, not criminal. *Harrell v. State*, 286 S.W.3d 315 (Tex. 2009). Because this is a criminal appeal, Beard's complaint is not properly before this Court in this proceeding. We overrule the sixth issue.

## Conclusion

We modify the trial court's judgments to delete the assessment of attorney's fees and investigator fees. As modified, the judgments are affirmed.


AL SCOGGINS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed as modified
Opinion delivered and filed February 29, 2012
Do not publish
[CRPM]