# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-11-00716-CR
NO. 03-11-00717-CR

**Kendall Ryan Brown, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT
NO. 64916 & 66117, THE HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

In cause number 03-11-00716-CR, appellant Kendall Ryan Brown appeals the trial court's judgment revoking his community supervision for burglary of a habitation and sentencing him to ten years' confinement in the Institutional Division of the Texas Department of Criminal Justice. In cause number 03-11-00717-CR, Brown appeals the trial court's judgment revoking his community supervision for robbery and sentencing him to ten years' confinement in the Institutional Division of the Texas Department of Criminal Justice. In a single point of error, Brown asserts that his counsel rendered ineffective assistance at the revocation hearing.[1] We affirm the judgments of revocation.

---

[1] Brown filed separate briefs in each of these appeals. However, he raises the same point of error in each case. Because these revocation proceedings were joined in the trial court below and Brown challenges the same conduct of his counsel in both cases, we address his points of error together as a single point here.

**BACKGROUND**

In May 2010, pursuant to a plea bargain, Brown pled guilty to the felony offenses of burglary of a habitation and robbery.[2] *See* Tex. Penal Code Ann. §§ 29.02, 30.02 (West 2011). In accordance with the plea bargain, he was sentenced to ten years in the Institutional Division of the Texas Department of Criminal Justice for each offense with the trial court's recommendation that he participate in the State Boot Camp Program. *See* Tex. Code Crim. Proc. Ann. art. 42.12, § 8 (West Supp. 2012); Tex. Gov't Code Ann. § 499.052 (West 2012). In October 2010, after successful completion of boot camp, the trial court suspended further imposition of the ten-year sentences and placed Brown on community supervision for a period of ten years for each of the offenses. *See* Tex. Code Crim. Proc. Ann. art. 42.12, § 3 (West Supp. 2012), § 8.

In August 2011, the State filed motions to revoke community supervision in each case alleging numerous violations, including testing positive for drugs on multiple occasions, failing to report a change of address, failing to report to his supervision officer, failing to attend or complete various court-ordered habilitation/rehabilitation programs, failing to maintain employment, failing to complete community service work, and failing to pay various fees and court costs.

At the revocation hearing, the trial court heard both motions to revoke during the same proceeding. Brown pled true to all but three of the allegations contained in each of the motions to revoke. These three allegations, identical in the two motions, were then abandoned by the State. The State then offered Brown's judicial confession in each case wherein he admitted to violating the

---

   [2] In the robbery case, Brown was charged by indictment with aggravated robbery. The plea bargain entailed Brown's plea to the lesser-included-offense of robbery.

conditions of community supervision. Neither party presented any additional evidence. Brown requested the opportunity to go to SAFPF (Substance Abuse Felony Punishment Facility), *see* Tex. Gov't Code Ann. § 493.009 (West 2012); *see also* Tex. Code Crim. Proc. ann. 42.12, § 14 (West Supp. 2012) (describing Substance Abuse Felony Program as condition of community supervision), to address his drug and alcohol problem. The State argued that further rehabilitative efforts were unwarranted. The trial court found that Brown had violated the conditions of supervision as alleged and granted the State's motions to revoke. The court revoked each of Brown's community supervision terms and sentenced him to serve the balance of the previously imposed ten-year sentences, ordering the sentences to run concurrently. *See* Tex. Code Crim. Proc. Ann. art. 42.12, § 23 (West Supp. 2012).

Brown subsequently filed identical motions for new trial in each case alleging ineffective assistance of counsel at the revocation hearing. Following a hearing, the trial court denied the motions. These appeals of the revocations followed.

## DISCUSSION

In his sole point of error, Brown asserts that his trial counsel was ineffective for failing to call character witnesses at the revocation hearing. At the hearing on the motions for new trial, two witnesses testified: Brown's mother and a potential future employer. Brown argues on appeal that these witnesses were available to testify at the punishment portion of the revocation hearing about his mental health problems and employment opportunities. He maintains that his counsel was ineffective for failing to call them to testify as mitigating witnesses.

Defendants have a right to counsel at a community supervision revocation hearing. Tex. Code Crim. Proc. Ann. art. 42.12, § 21(d) (West Supp. 2012); *Ex parte Doan*, 369 S.W.3d 205, 210 (Tex. Crim. App. 2012); *Hatten v. State*, 71 S.W.3d 332, 333 n.1 (Tex. Crim. App. 2002) (citing *Ruedas v. State*, 586 S.W.2d 520 (Tex. Crim. App. 1979)). "The right to counsel requires more than the presence of a lawyer; it necessarily requires the right to effective assistance." *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). The right does not, however, provide a right to errorless counsel, but rather to objectively reasonable representation. *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984)).

To establish ineffective assistance of counsel, an appellant must demonstrate by a preponderance of the evidence both deficient performance by counsel and prejudice suffered by the defendant. *Strickland*, 466 U.S. at 687; *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012). Under the first prong, the appellant must demonstrate that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 687-88; *Ex parte Lane*, 303 S.W.3d 702, 707 (Tex. Crim. App. 2009). To meet the second prong, the appellant has to show the existence of a reasonable probability—one sufficient to undermine confidence in the outcome—that but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694; *Lane*, 303 S.W.3d at 707. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Strickland*, 466 U.S. at 700; *see Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010).

The burden is on the appellant to affirmatively demonstrate that counsel's errors were so serious as to deprive the defendant of a fair proceeding whose result is reliable. *See Perez*, 310 S.W.3d at 893 (citing *Strickland*, 466 U.S. at 687). To overcome the presumption that counsel rendered adequate assistance, the appellant must identify the specific acts or omissions of counsel that allegedly constitute ineffective assistance and then affirmatively prove that they fall below the professional norm for reasonableness. *Strickland*, 466 U.S. at 690; *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002). "'The fact that another attorney may have pursued a different tactic at trial is insufficient to prove a claim of ineffective assistance.'" *Ex parte Miller*, 330 S.W.3d 610, 616 (Tex. Crim. App. 2009) (quoting *Scheanette v. State*, 144 S.W.3d 503, 509 (Tex. Crim. App. 2004)); *see Sessums v. State*, 129 S.W.3d 242, 246 (Tex. App.—Texarkana 2004, pet. ref'd). Even if an appellant shows that particular errors of counsel were unreasonable, the appellant must further show that they actually had an adverse effect on the defense. *Strickland*, 466 U.S. at 693-95; *Cochran v. State*, 78 S.W.3d 20, 24 (Tex. App.—Tyler 2002, no pet.). Merely showing that the errors had some conceivable effect on the proceedings will not suffice. *Strickland*, 466 U.S. at 693; *Martinez*, 330 S.W.3d at 901. The benchmark for judging any claim of ineffectiveness is whether counsel's conduct so undermined the proper functioning of the adversarial process that the proceeding cannot be relied on as having produced a just result. *Strickland*, 466 U.S. at 686.

The decision about whether to present witnesses is largely a matter of trial strategy. *Lair v. State*, 265 S.W.3d 580, 594 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd). Here, counsel testified at the hearing on the motions for new trial, that he believed the better strategy to employ given the numerous violations by his client was "the least said the better" approach. He expressed

concerns about witnesses being subject to cross-examination and a preference for "relying on the presentence investigation, which pretty well had everything in it." Counsel further indicated that he did not feel that calling his client's mother to testify would be helpful. First, he testified that in his experience—34 years as a practicing attorney—he did not find testimony from a defendant's mother to be "particularly beneficial."[3] Second, counsel testified that the information about his client's mental health issues was already before the court in the PSI reports. In addition, the record reveals that counsel's strategy was to focus on his client's need for substance abuse treatment, based on evidence already before the court, rather than explanations or excuses for his failure to comply with the conditions of his community supervision. The fact that this strategy ultimately proved unsuccessful does not render counsel's assistance ineffective.

Further, an attorney's decision not to present particular witnesses may be a strategically sound decision if the attorney bases it on a determination that the testimony of the witnesses may be harmful, rather than helpful, to the defendant. *See id.*; *Shanklin v. State*, 190 S.W.3d 154, 164 (Tex. App.—Houston [1st Dist.] 2005), *pet. dism'd, improvidently granted*, 211 S.W.3d 315 (Tex. Crim. App. 2007). Here, counsel expressed concerns about Brown's mother as a witness because she would be subject to cross-examination which, he felt, could potentially be detrimental "under these particular circumstances"—the circumstances being that his client was on

---

[3] The record reflects that the judge who revoked Brown's community supervision terms was the same judge who placed Brown on community supervision after he completed boot camp. The record of that sentencing hearing shows that the judge admonished Brown about making the necessary changes in his behavior. Specifically, the court noted that "[y]our mom can plead and cry and the Court can give you things to do, but the only one that's going to change your life is you[.]" This supports counsel's belief that pleas from a defendant's mom after repeated failures to take responsibility for his actions may not be beneficial to a defendant.

probation for two serious felony offenses and then almost immediately upon release from custody started testing positive for drugs and stopped reporting to his supervision officer. In fact, while Brown's mother testified at the hearing on the motions for new trial about his mental health issues, she also indicated that Brown failed to participate in the court-ordered treatment programs because, she felt, he did not have the financial resources to pay the program fees—suggesting that his mental health issues were not the reason for his non-compliance. However, the record also suggests that Brown bore no costs for some of the court-ordered programs he failed to participate in or complete. In addition, Brown's mother asked for her son to have another chance on community supervision "being that his support system have (sic) changed." Yet, the record reflects that before he absconded from community supervision, Brown was living with his mother. Indeed, the record reflects that Brown's mother was present at the sentencing hearing when Brown was placed on community supervision after completing boot camp. At that time, she requested that living with her be a condition of her son's community supervision so she could monitor him. Nevertheless, the record further reflects that she contacted her son's community supervision officer to advise her that she had moved and that her son still lived with her, but that she did not see him often. Accordingly, her testimony does not necessarily demonstrate a change in support systems warranting another chance. We find that counsel could have reasonably concluded that Brown's mother as a witness was as potentially dangerous as she was potentially helpful.

Moreover, the failure to call witnesses "is irrelevant absent a showing that such witnesses were available and appellant would benefit from their testimony."[4] *See Perez*, 310 S.W.3d at 894 (quoting *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983)). While it is true that Brown's mother and potential future employer may have been able to provide some potentially mitigating information, their testimony could just as easily have harmed Brown because the evidence they offered revealed that Brown had a support system available but still failed to comply with the conditions of community supervision. Counsel may well have determined that mitigation evidence of the type offered at the motion for new trial hearing would not have convincingly shown that Brown's violations warranted mercy. Or, counsel may have felt that such evidence would not have been beneficial because it undermined his client's attempt to take responsibility for his conduct and his ensuing request for substance abuse treatment.

Furthermore, as counsel noted at the hearing on the motions for new trial, the record before the court did in fact contain evidence of Brown's mental health issues. The PSI reports indicated that Brown was taking medications for bipolar disorder and attention deficit hyperactive disorder. The supervision plan included the community supervision officer's recommendation that Brown's supervision include psychological screening and/or counseling at University of Mary Hardin-Baylor and then MHMR, if necessary. The trial court's awareness of Brown's mental

---

[4] In evaluating ineffective-assistance claims for the failure to call witnesses, the court of criminal appeals has held that "the failure to call witnesses at the guilt-innocence and punishment stages is irrelevant absent a showing that such witnesses were available and appellant would benefit from their testimony." *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010) (quoting *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983)). We believe the principle underlying this rule applies to the failure to call witnesses at a revocation hearing.

health issues is further demonstrated by the fact that the court ordered Brown to take his medications as prescribed and to participate in and successfully complete outpatient treatment as conditions of his community supervision.[5] In his pleas of true, Brown admitted his failure to comply with these conditions. Thus, exposing his client's mother to cross-examination to present evidence already before the court may not necessarily have been beneficial or helpful in obtaining the treatment sought.

Brown asserts that the testimony of his potential future employer would have shown that "[he] would have been able to become current on the financial aspect of his community supervision if he had been continued on community supervision and been able to go work [for this witness]." However, Brown did not raise the inability to pay as a defense to his failure to meet his financial obligations. Further, the record reflects that Brown pled not true to allegations related to his failure to maintain employment because, as explained by trial counsel, he was in fact employed during the time period in question. Thus, the trial court had information concerning Brown's employment. Brown merely speculates that testimony about a potential job opportunity that was, in the witness's opinion, "better than flipping burgers" might have been beneficial.

Based on the testimony presented at the hearing on the motions for new trial, we are not convinced that Brown necessarily would have benefitted from the testimony of these two witnesses. Furthermore, we do not see a reasonable probability that the testimony of these two

---

[5] During Brown's sentencing hearing, the judge specifically reviewed the conditions of supervision related to Brown's mental health issues and his need for treatment with Brown.

9

witnesses would have changed the result of Brown's revocation hearing.[6]  Brown's pleas of true to the allegations in the motions to revoke, about which he does not now complain, were sufficient to support the trial court's revocation of his community supervision terms.[7]  *See Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980); *Atchison v. State*, 124 S.W.3d 755, 758 (Tex. App.—Austin 2003, pet. ref'd).  Accordingly, we hold that Brown failed to show a reasonable probability that the end result of revocation would have been different.

Brown's ineffective-assistance claim fails because he has not met his burden under either prong of *Strickland*.  There is no evidence in the record that there was mitigating evidence for counsel to present that was not already before the court in some way or that counsel's decision not to present such evidence via "live testimony" in order to avoid exposure to potentially damaging cross-examination was not sound trial strategy.  Further, there is nothing in the record to suggest that but for counsel's alleged failure to call these two witnesses, there is a reasonable probability the outcome of the proceedings would have been different.  Brown's sole point of error on appeal is overruled.

---

[6] We note that the trial court judge who conducted the hearing on the motions for new trial was the same judge who presided over the revocation hearing and revoked Brown's community supervision terms.  Yet, after hearing the mitigating character evidence presented at the motion for new trial hearing, she did not opt to grant the motion for new trial.

[7] Brown does not contend that his counsel's ineffective assistance rendered his pleas of true involuntary.

## CONCLUSION

Brown has failed to demonstrate either deficient performance or sufficient prejudice. Thus, he has not established that he suffered ineffective assistance of counsel. Accordingly, we affirm the trial court's judgements revoking his community supervision.

 

_____

Melissa Goodwin, Justice

Before Justices Puryear, Henson and Goodwin

Affirmed

Filed:   September 28, 2012

Do Not Publish